**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

LAURENCE RUSSO,⠀⠀⠀⠀⠀)
WILLIAM VILLARI⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀Plaintiffs,⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀Civil Action No. 01-CV-4458 (JLL)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
PETER F. RYERSON, et al.,⠀⠀⠀)⠀⠀⠀⠀⠀⠀**OPINION**
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀Defendants.⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)

**LINARES**, District Judge.

⠀⠀⠀⠀This matter comes before the Court on the motions of Defendants Office of the Passaic

County Superintendent of Elections and Commissioner of Registration, the Personnel Office of

the County of Passaic, the County of Passaic and the Board of Chosen Freeholders of the County

of Passaic ("County Defendants"), Defendants New Jersey Department of Personnel and Merit

System Board, the Honorable Christine Todd Whitman, New Jersey Executive Department, New

Jersey Department of Law and Public Safety and the State of New Jersey ("State Defendants"),[1]

Plaintiffs Laurence Russo and William Villari ("Plaintiffs") for summary judgment pursuant to

---

⠀⠀⠀⠀[1]The Court notes that Plaintiff Laurence Russo has not named each of these entities as
Defendants. Thus, when referring to the "State Defendants" with respect to Russo, the Court only
refers to the New Jersey Department of Personnel and Merit System Board and Governor
Christine Todd Whitman. When referring to the "State Defendants" with respect to Villari, the
Court refers to Governor Christine Todd Whitman, the New Jersey Executive Department, the
New Jersey Department of Law and Public Safety, the New Jersey Department of Personnel and
Merit System Board and the State of New Jersey.

Fed. R. Civ. P. 56 and Defendant Peter Ryerson's ("Ryerson") motion for leave to join in the

dispositive motions of the County Defendants and State Defendants and for summary judgment.

These motions are resolved without oral argument pursuant to Fed. R. Civ. P. 78. For the

reasons set forth below, the County Defendants' motion is granted in part and denied in part; the

State Defendants' motion is granted; the Plaintiffs' motion is granted in part and denied in part

and Ryerson's motion is denied.

### Jurisdiction

This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 and

supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

### I.  Background

**A.     Factual Background**

The Court notes that the parties have not stipulated to any uncontested facts. (Final

Pretrial Order, p. 15). However, for the purposes of these motions, the Court will rely upon a

factual framework available from each party's Statement of Undisputed Material Facts submitted

in conjunction with their motion for summary judgment.

Plaintiff William Villari ("Villari") began employment in the Office of the Commissioner

of Elections for the County of Passaic ("Elections Office") in June 1987 as an Investigator.

Villari became the Chief Investigator for the Elections Office in 1990. His employment ended

December 14, 1999. Plaintiff Laurence Russo ("Russo") was appointed by former Governor

Christine Todd Whitman ("Governor Whitman") as Deputy Superintendent of Elections in

Passaic County in 1994. Russo's term expired June 27, 1999 but he remained in the position as a

"holdover" employee until March 27, 2000 when he was notified that he would not be re-appointed by Governor Whitman. Ryerson was appointed by Governor Whitman to the position of Passaic County Superintendent of Elections in June 1998 to serve out the remainder of a predecessor's term until June 1999. In March, 2000 Ryerson was notified that he would not be re-appointed by the Governor.

**B.    Procedural Background**

Russo filed his Complaint on September 20, 2001 ("Russo Complaint")[2]. As amended, the complaint alleged three counts under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000(e)-2, et seq., three counts under the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-12(a), et seq., two counts under the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., one count under 42 U.S.C. § 1983 for deprivation of his civil rights, one count of intentional infliction of emotional distress, one count of negligence, one count of negligent and/or willful hiring and retention, one count of battery, one count of assault and one count of defamation. Each of these counts was alleged against the County Defendants, the State Defendants and Ryerson, individually and in his official capacity. The Honorable Katherine Hayden of the United States District Court, District of New Jersey, issued an order on March 6, 2002 dismissing Russo's ADA and §1983 claims against the State Defendants as well as the claims of intentional infliction of emotional distress, battery, assault, and the negligent

---

[2]Russo's Complaint names the following defendants: Ryerson in his individual and official capacity, the Office of the Passaic County Superintendent of Elections and Commissioner of Registration, the Personnel Office of the County of Passaic, the County of Passaic, the Board of Chosen Freeholders of the County of Passaic, the New Jersey Department of Personnel and Merit System Board and Governor Whitman as former governor and chief of the Executive Department of the State of New Jersey.

hiring and retention claim against both the State and County Defendants. None of Russo's claims against Ryerson have been dismissed.

Villari filed his Complaint on December 13, 2001 ("Villari Complaint").[3] The complaint alleges three counts under Title VII, three counts under the NJLAD, one count of breach of an employment contract, one count of intentional infliction of emotional distress, one count of respondeat superior, one count of negligence, one count of negligent hiring and retaliation, one count of battery, one count of assault and one count of defamation. Each of these counts was alleged against the County Defendants, the State Defendants and Ryerson, individually and in his official capacity. No claims have been dismissed.

In the Answers to the Plaintiffs' Complaint, the County Defendants brought a cross claim against the State Defendants and against Ryerson for contribution and indemnification.

In 2004, the State and County Defendants separately moved for judgment on the pleadings or dismissal in both actions on the grounds that neither set of defendants was Ryerson's employer and thus had no liability for Ryerson's actions. The Honorable Ronald J. Hedges, United States Magistrate Judge, District of New Jersey issued a Report and Recommendation on March 4, 2004 and, with no objections having been filed, this Court adopted the Report and Recommendation on March 31, 2004. The Court held that for the purposes of determining judgment on the pleadings, the State of New Jersey was Ryerson's,

---

[3]Villari's Complaint names the following defendants: Ryerson in his individual and official capacity, the Office of the Passaic County Superintendent of Elections and Commissioner of Registration, the Personnel Office of the County of Passaic, the County of Passaic, the Board of Chosen Freeholders of the County of Passaic, the New Jersey Department of Personnel and Merit System Board and Governor Whitman as former governor and chief of the Executive Department of the State of New Jersey, the New Jersey Executive Department, the New Jersey Department of Law and Public Safety and the State of New Jersey.

Russo's and Villari's employer for purposes of Title VII and the NJLAD. The Court also determined that, for the purposes of the motion on the pleadings, Passaic County was Ryerson's "co-employer" under Title VII and the NJLAD. Russo's and Villari's complaints were consolidated into one action on May 27, 2004.

The County Defendants presently move for summary judgment on all claims, asserting that Plaintiffs cannot sustain their burdens of proof with respect to their Title VII and NJLAD claims and the Plaintiffs' claims for negligence and punitive damages. The County Defendants also specifically assert that Villari cannot meet his burden of proof on his claims for intentional infliction of emotional distress, battery, assault, defamation, respondeat superior and breach of employment contract and that Russo cannot meet his burden of proof on his claims under the ADA. These defendants also assert that the Elections Office is not an entity that can sue or be sued and thus is not properly named as a defendant.

State Defendants also presently move for summary judgment, asserting that Plaintiffs cannot sustain their burdens of proof with respect to their Title VII, NJLAD, negligent hiring and retention and negligence claims. The State Defendants also assert that Villari is unable to hold the State Defendants liable for intentional torts allegedly committed by Ryerson. Additionally, the State Defendants request the Court to dismiss the New Jersey Department of Personnel and Merit System Board as a defendant and to dismiss the County's cross claim for indemnification and/or contribution from the state.

Plaintiffs move for summary judgment on all remaining claims against all Defendants.

Ryerson moves for leave to join in the dispositive motions of both the County and State Defendants and for summary judgment.

5

## II.  Discussion

### A.    Summary Judgment Standard

Fed. R. Civ. P. 56(c) provides for summary judgment when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996). Alternately, summary judgment will be granted when the evidence on the record "is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).  Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists.  Jersey Cent. Power & Light Co. v. Lacey Township, 772 F.2d 1103, 1109 (3d Cir. 1985).  The non-moving party cannot rest on mere allegations and must instead present actual evidence that establishes a genuine issue as to a material fact for trial.  Anderson, 477 U.S. at 256-57; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995); Sound Ship Bldg. Corp. v. Bethlehem Steel Co., 533 F.2d 96, 99 (3d Cir. 1976), cert. denied, 429 U.S. 860 (1976).  In considering a motion for summary judgment, all evidence submitted must be viewed in the light most favorable to the party opposing the motion.  Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 330 (3d Cir. 1995).  However, even if the facts are undisputed, "summary judgment may not be granted ... if there is a disagreement over what inferences can be reasonably drawn from the facts." Ideal Dairy Farms, Inc. v. John Labatt, Ltd., 90 F.3d 737, 744 (3d Cir. 1996) (quoting Nathanson v. Med. Coll. of Pa., 926 F.2d 1368, 1380 (3d Cir. 1991).

6

The issue before the Court is to determine whether any genuine issues of material fact exist and whether Russo, Villari, the County Defendants, the State Defendants or Ryerson are entitled to judgment as a matter of law.

**B.      Passaic County's Employer Status**

      **1.      Background**

As a threshold matter, the Court determines it useful to conduct an analysis of the joint employer/co-employer issue present in this action previously addressed by Magistrate Hedges. Plaintiffs assert that the County Defendants and State Defendants share employer status for the Plaintiffs, resulting in these defendants sharing liability for Plaintiffs' exposure to an allegedly hostile work environment. The County Defendants posit that Plaintiffs have not presented evidence which could permit a reasonable jury to find that Passaic County was a "co-employer" or "joint employer" of Plaintiffs and by extension, the County Defendants are not liable for their claims of hostile work environment.

State Defendants argue that the County's employer status is a question that is inappropriate for summary judgment since there is evidence that raises genuine issues of material fact with respect to the amount of involvement and authority of the County in the Elections Office's personnel decisions. Inter alia, the State Defendants' arguments include County involvement in funding the Elections Office, personnel decisions and distribution and enforcement of the sexual harassment policy. The State Defendants also assert that there is sufficient evidence to demonstrate that Passaic County could be the *primary* employer of the Plaintiffs. The Plaintiffs echo the arguments set forth by the State Defendants and assert that there is sufficient evidence in the record to allow a jury to conclude that Passaic County shared

7

employer status with the State Defendants.

2.    **Analysis**

Throughout its submissions, the County Defendants assert that the County was not the "employer" of Russo, Villari nor Ryerson and thus cannot be liable for any alleged violations of Title VII and NJLAD based on hostile work environment.

Section 2000e-2 of Title 42 of the United States Code sets forth certain behaviors which constitute unlawful employment practices of an employer. Id. Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person ...." 42 U.S.C. § 2000e(b). The NJLAD provides a broader definition of "employer" which includes "all persons ... the State, any political or civil subdivision thereof, and all public officers, agencies, boards or bodies." N.J.S.A. 10:5-5 (e). The County Defendants allege that they cannot be found joint employers" or "co-employers"of Russo or Villari with the State of New Jersey and that they have no ultimate Title VII or NJLAD liability for claims based on hostile work environment. This Court previously determined, adopting a Report and Recommendation issued by the Honorable Ronald J. Hedges, that the State of New Jersey was Ryerson's, Russo's, and Villari's employer for purposes of Title VII and the NJLAD. However, the Court made no similar declaration concerning the County Defendants. Nor did the Court extend its employer-status analysis to claims other than those brought pursuant to Title VII or the NJLAD.

The County Defendants argue that since the State did not delegate duties to the County to

8

make personnel decisions or to keep the Elections Office free of harassment, as a matter of law, it cannot be deemed a co-employer or joint employer for purposes of Title VII or NJLAD liability for claims of hostile work environment.

For claims of hostile work environment brought under Title VII, the Third Circuit applies a "control test" to determine whether an entity is an "employer." See Graves v. Lowery, 117 F.3d 723 (3d Cir. 1997). Under the NJLAD, New Jersey state courts apply a similar test to determine whether an employer is liable. See Chrisanthis v. County of Atlantic, 361 N.J. Super. 448, 453-54 (App. Div. 2003). Additionally, the New Jersey Supreme Court has adopted a policy of looking to Title VII for guidance when interpreting provisions of the NJLAD. See Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 600-01 (1993). Thus, for the purposes of determining whether the County is the "co-employer" or "joint employer" of the Plaintiffs, the Court will apply principles of Title VII jurisprudence.

In Graves, former law clerks employed in a state judicial district brought a Title VII sex discrimination suit against several defendants, including the county where the courthouse was situated. 117 F.3d at 723. The county moved to dismiss the complaint on the grounds that it could not be considered the employer or co-employer of the clerks since the clerks were formally considered employees of the state. Id. at 723-24. The District Court dismissed the complaint and the clerks appealed to the Third Circuit which reversed and remanded, having determined that the employment relationship was "sufficiently ambiguous" that the complaint should not have been dismissed at the pleading stage. Id. at 724, 729.

The Court of Appeals held that even if the clerks may have been employees of the courts,

9

this fact did "not preclude the possibility that the county may *share* co-employer or joint employer status with the courts." Id. at 727 (emphasis added). To determine whether the plaintiffs could impute co-employer or joint employer status to the county, the Court conducted a careful factual inquiry. Inter alia, the Court considered which entity's sexual harassment policy covered the clerks, which entity paid their salaries, retained the right to hire and fire the clerks and had control over the clerks' daily employment activities. Id. at 727-30. Although the Graves Court made no final determination regarding the county's employer status, the factors it considered are relevant to this Court's analysis of the County Defendants' motion for summary judgment on this issue.

The County Defendants cite to Graves for the proposition that "the County's 'lack of authority over the personnel decisions ... absolved the County of any liability as an employer.'" (County Br. Summ. J., p. 22) (citing Graves, 117 F.3d at 728). Although this statement, if properly attributed to the Graves Court, would support the position of the County Defendants, it does not appear to correctly cite the reasoning set forth in Graves. The aforementioned language is the Graves Court's interpretation of the holding in a prior, related matter, Legrand v. Lowery, No. CV-93-1980, slip. op. at 6 (M.D.Pa. May 3, 1994). In Legrand, the District Court determined that evidence demonstrating county funding of the clerk positions, *by itself*, was not enough to impose liability on the county. Id. at 4. Although the Graves Court acknowledged this holding, it determined that Legrand was distinguishable since in Graves, the clerks provided evidence *in addition to* county funding, to prove that the county "exercised the requisite control over the daily employment activities of the Clerks to incur liability as a co-employer." Lowery, 117 F.3d at 728.

10

The County Defendants go on to argue that since there is no evidence that the State had delegated any responsibilities to the County to make personnel decisions or to keep the Elections Office free of harassment, as a matter of law, they cannot be found to be a co-employer or joint employer of either Plaintiff. In support, County Defendants allege that the County is legally prohibited from interfering in the operations of the Elections Office and had no legal authority to punish or discipline Superintendent Ryerson for his alleged misfeasance. In response, the Plaintiffs and the State Defendants point to elements of County control over the Plaintiffs and argue that the County's status as a co-employer or joint employer is a question for the fact-finder and should not be disposed of at the summary judgment stage.

The Third Circuit has determined that "the precise contours of an employment relationship can only be established by a careful factual inquiry." Graves, 117 F.3d at 729 (citations omitted). By statute, the Elections Office exists by ordinance or resolution of the Passaic County Board of Freeholders (the "Freeholders"). N.J.S.A. 19:32-26.1. The Freeholders also possess the authority to determine the salary of the Superintendent and in turn, the Deputy Superintendent since that office receives 90% of the Freeholder-determined Superintendent salary. N.J.S.A. 19:32-26. Although the Superintendent determines the salary of his personnel (aside from the Deputy Superintendent), the salaries are paid from the County treasury, as are other "necessary expenses" of the Elections Office. N.J.S.A. 19:32-27. Further, the Freeholders "shall provide suitable rooms or rooms for the transaction of the business of such superintendent." N.J.S.A. 19:32-29.

In light of the foregoing, the Court determines that genuine issues of material fact exist regarding Passaic County's control over Russo, Villari and Ryerson and the other employees

within the Elections Office. Ambiguities exist regarding the extent of control that the County

Defendants exercised over the activities and daily operation of the Elections Office such that a

reasonable jury could conclude that Passaic County shared co-employer or joint employer status

with the State for the purposes of Title VII and NJLAD. For the foregoing reasons, the Court will

deny summary judgment on the issue of whether the County was the co-employer or joint

employer of the Plaintiffs.

## C.     Laurence Russo

Governor Whitman appointed Russo to the position of Deputy Superintendent of

Elections for Passaic County in 1994. Russo served in this position until March, 2000 when he

was notified by letter that he would not be re-appointed by the Governor for a subsequent term.

(West Decl. Ex. L). Russo held his position pursuant to N.J.S.A. 19:32-26.1 which provides that

the New Jersey Governor will appoint such a person "with the advice and consent of the Senate."

Id. Pursuant to N.J.S.A. 19:32-26.1, the Deputy Superintendent shall hold the office for five

years. Id. Russo had a statutory duty to "assist the superintendent of elections in the performance

of [his] duties ... and [held] such powers and duties as the superintendent may delegate to him

from time to time." N.J.S.A. 19:32-26.2. Pursuant to N.J.S.A. 19:32-26.1, Russo received 90% of

Superintendent Ryerson's salary which was determined, pursuant to N.J.S.A. 19:32-27, by

resolution by the Board of Chosen Freeholders of the County of Passaic and paid by the Passaic

County treasurer. Id.

### 1.     Title VII Claims

Russo moves for summary judgment on Counts One, Two and Three of his Complaint

which allege various violations of Title VII. Specifically, Russo alleges that he suffered

12

intentional discrimination on account of his sex and national origin which contributed to and created a hostile work environment in violation of Title VII and that he was retaliated against for voicing his complaints with regard to such discrimination. With regard to allegations of discrimination on account of his sex, Russo alleges that Ryerson engaged in conduct consisting of "sexual comments and touches [that] would not have occurred but for the Plaintiff's gender." (Russo Compl. ¶¶ 117, 147). The basis for Russo's discrimination based on national origin claims consists of allegations that Ryerson referred to Russo as a "ginzo" and made certain derogatory remarks referring to his national origin that would not have occurred but for Russo's Italian heritage. (Russo Compl. ¶¶ 129, 156). In Count Three, Russo alleges that defendants' failure to reappoint him following Russo's filing of certain grievances amounted to retaliation in contravention of Title VII.

County Defendants request the Court to deny Russo's motion for summary judgment on Counts One, Two and Three and independently move for summary judgment on these claims. County Defendants do not refute the substance of Russo's claims but rather, argue that Russo has not alleged sufficient evidence proving that County Defendants could be a "joint employer" or "co-employer" liable for the alleged hostile work environment under Title VII. With respect to Russo's claim of retaliation, County Defendants oppose and move for summary judgment on the basis that Russo's non-reappointment was a non-justiciable political question left solely within the discretion of then Governor Whitman.

State Defendants request the Court to deny Russo's motion for summary judgment on Counts One, Two, and Three and independently move for summary judgment on these same claims. State Defendants ask the Court to dismiss Russo's Title VII claims since Russo failed to

13

first exhaust his administrative remedies and since Russo, as a political appointee, is exempt

from the statute's protections and is without standing to pursue such claims. With respect to

Russo's claim for retaliation, the State Defendants defend and move for summary judgment on

the basis that this issue involves a non-justiciable political question improper for judicial review.

      a.    **Standing**

State Defendants assert that Russo was an appointee on the policymaking level, and thus

exempt from Title VII's protections. Russo's status as an employee is a question of federal law,

but New Jersey state law is relevant to the extent that it describes Russo's position, including his

duties and the way he is hired, supervised and fired. See Gregory v. Ashcroft, 501 U.S. 452, 466

(1991) (employing a similar approach); Costenbader-Jacobson v. Pennsylvania, 227 F.Supp.2d

304, 309 (M.D.Pa. 2002) (employing a similar approach).

Section 2000e-2 of Title 42 of the United States Code provides, in pertinent part that

It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to

discharge any individual, or otherwise to discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such individual's race,

color, religion, sex, or national origin. 42 U.S.C. § 2000e-2 (a)(1). To have standing to bring a

claim under Title VII, a plaintiff must first demonstrate that he is an "employee" as defined in 42

U.S.C. § 2000e(f). Section 2000e(f) defines an "employee" as "an individual employed by an

employer," but exempts from its definition:

14

> any person elected to public office in any State or political subdivision of
> any State by the qualified voters thereof, or any person chosen by such
> officer to be on such officer's personal staff, or **an appointee on the
> policy making level** ... The exemption set forth in the preceding sentence
> shall not include employees subject to the civil service laws of a State
> government, governmental agency or political subdivision.

Id. (emphasis added). The language contained in this exemption mirrors the language found in a

similar provision within the Age Discrimination in Employment Act, 29 U.S.C. § 630(f), and

courts have interpreted the provisions similarly it to exclude governor-appointed judges, Gregory,

501 U.S. 452, and a former governor-appointed assistant director of the state lottery,

Costenbader-Jacobson, 227 F.Supp 2d 304.

　　　In Gregory, the Supreme Court employed a broad construction of "employee" within the

ADEA and noted that it is "far from plain" that the exception requires the contested employee to

actually *make* policy. 501 U.S. at 456 (emphasis added). Instead, the Court determined that when

interpreting the "policy making" portion of the exemption "[i]t may be sufficient that the

appointee is in a position requiring the exercise of discretion concerning issues of public

importance." Gregory, 501 U.S. at 466-67. That is, it may be sufficient that the employee merely

be on the policymaking *level*. Id. In its analysis, the Court considered the judges' authority to

fashion and apply the common law, establish court rules of practice and procedure and establish

local rules of practice persuasive in reaching its determination. In Costenbader-Jacobson, the

Middle District Court of Pennsylvania analyzed a plaintiff's status as an employee on a policy

making level in light of her state statutory powers. 227 F.Supp 2d at 309. To conduct this

analysis, the Costenbader-Jacobson Court considered a number of factors compiled from similar

cases. Id. at 309. Among these factors are:

> whether the appointee has discretionary rather than solely administrative powers ... whether the appointee serves at the pleasure of the appointing authority ... whether the appointee ... formulates policy ... whether the appointee is empowered to act and speak on behalf of a policymaker, particularly an elected official ... whether the appointee is exempt from civil service protection, controls other employees, and has some technical competence or expertise.

227 F.Supp 2d at 309 (citations omitted). Applying these factors to the plaintiff, the <u>Costenbader-Jacobson</u> Court determined that as the Deputy Executive Director of the Pennsylvania Lottery, plaintiff "possessed genuine discretionary and policymaking powers ... [w]hether she exercised them or not." <u>Id.</u> at 310. The Court determined that the plaintiff's responsibilities and functions were not merely ministerial or administrative. <u>Id.</u> Rather, the plaintiff had supervisory responsibilities over other employees, was exempt from civil service protection, spoke on behalf of the Governor and carried out the duties of her supervisor when he was away from the office. <u>Id.</u>

Counsel for State Defendants and for Russo do not cite to any instances of directly controlling authority and this Court has been unable to locate precedent within this Circuit on this legal issue. However, the Court finds persuasive the reasoning and analyses set forth in <u>Gregory</u> and <u>Costenbader-Jacobson</u>, and determines that Russo, in his position as Deputy Superintendent, does not meet the definition of "employee" required for standing under Title VII.

Russo was appointed by Governor Whitman in 1994. (Russo Dep. 75:3-6, March 21, 2003). While employed as Deputy Superintendent, Russo did not have civil service protection. (<u>Id.</u> at 75:3-6). By statute, Russo was directed to "serve as superintendent in the absence of the superintendent," N.J.S.A. 19:32-26.2, and did so when Ryerson's predecessor, Alice Zona, failed

16

to complete her term as Superintendent. (Id. at 47:8-25; 48:1-9). In fact, when Russo served as acting Superintendent for approximately three months, he was advised that he possessed "full authority over all matters relating to [his] office." (Id. at 47: 8-17; 90:11-17). By statute, the Deputy Superintendent possesses a multitude of powers, including the ability to investigate suspected election violations and the authority to issues subpoenas and effectuate arrests without a warrant. See N.J.S.A. 19:32-30; 19:32-31; 19:32-45.

Russo urges that the Court to determine that Russo's duties were so "tightly circumscribed" by the election laws that they were more administrative than discretionary. (Pl. Br. Opp., p. 5). In support of this proposition, Russo directs the Court to the factors set forth in Costenbader-Jacobson, arguing that since Russo did not speak on behalf of a policymaker and made no significant changes to the election supervision system his position was not on the policymaking level. To the Court, it appears that Russo erroneously interprets the factors articulated in Costenbader-Jacobson to comprise a mutually exclusive "test." Rather, as emphasized in Gregory, the factors are merely a framework for a court's analysis. This Court determines that a position which possesses the authority to arrest, subpoena and investigate possible violations of elections laws necessarily involves policy considerations. Although Russo and Ryerson did not have the discretion *not* to enforce the elections laws, they possessed broad discretion regarding how to structure and execute investigations into possible violations. These exercises of discretion constitute policymaking, even within the definition of "policy" Russo urges the Court to adopt.

The Court determines that there is no genuine issue of material fact that precludes entry of summary judgment with respect to Russo's Title VII claims. The undisputed facts contained in

17

the record in conjunction with the relevant authority-providing state statutes clearly demonstrate that Russo was an appointee of Governor Whitman with policymaking authority at all times relevant to his Title VII claims. Thus, he is exempt from the definition of employee in Title VII. Accordingly, the Court will deny Russo's motion for summary judgment on Counts One, Two and Three of his complaint. Although the County Defendants have not argued Russo's employee status, the Court's determination that Russo lacks Title VII standing applies with equal force to these defendants as well. Counts One, Two and Three are hereby dismissed as alleged against both the County and State Defendants.

### b. Remaining Arguments

Although the Court has determined that Russo is without standing to bring a Title VII claim, this shall not be construed as a determination on the merits of any party's remaining allegations or defenses made with respect to Counts One, Two and Three but which may also apply to other issues in this action. To the extent that arguments raised with respect to these claims are also relevant in the Court's analysis of the remaining portions of the motions currently before the Court, these will be addressed accordingly.

### 2. NJLAD Claims

In Counts Four, Five and Six of his Complaint, Russo alleges that the County and State Defendants are liable for violations of the NJLAD. Specifically, Russo alleges that these Defendants are liable for the existence of a hostile work environment based on his sex and national origin and for retaliation. Further, Russo also moves for summary judgment with regard to the individual defendants' liability. Russo moves for summary judgment on these claims and

18

the State Defendants and County Defendants cross-move, seeking to have these claims dismissed.

### a.    Hostile Work Environment

Russo brings his discrimination claims under the NJLAD against the County and State Defendants as ones based on hostile work environment. Russo alleges that Ryerson's conduct, relating to Russo's sex and his national origin, created a working environment that was hostile and abusive, for which these defendants are liable.[4] Russo asserts that since the County and State Defendants shared employer-status for Russo, they are both liable for Ryerson's conduct in creating a hostile work environment.

The County Defendants, in opposition to Russo's motion and in support of their own motion, argue that the County Defendants are not liable for either of Russo's claims of hostile work environment. The County Defendants argue that there is insufficient evidence to establish that the County was a co-employer or joint-employer of Russo, and thus the County has no liability for Russo's claims of hostile work environment based on sex or national origin . With respect to Russo's claim based on national origin, the County also moves for summary judgment on the basis that Russo has not established a prima facie case of hostile work environment based on national origin, and that alternately, the County has an affirmative defense to such a claim.

The State Defendants move for summary judgment on Russo's NJLAD claims on the basis that the court lacks subject matter jurisdiction pursuant to the Eleventh Amendment. As

---

[4] The NJLAD possesses a broader definition of "employee" than Title VII and thus, the Court must reach the merits of such claims.

such, the State argues that all of Russo's NJLAD claims should be dismissed as alleged against any State Defendant.[5]

### i.     *Eleventh Amendment Immunity*

As a preliminary matter, the Court deems it prudent to address the State Defendants' claims of Eleventh Amendment immunity from suit. "Under the Eleventh Amendment, a federal court is prohibited from hearing a suit against a state unless the state has consented to such a suit." Camden County Recovery Coalition v. Camden City Bd. of Educ. for Public Sch. Syst., 262 F. Supp. 2d 446, 448 (D.N.J. 2003). The Eleventh Amendment provides that: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

The Eleventh Amendment not only prohibits suits against a state by citizens of other states, but also prohibits suits against a state by its own citizens, as well as suits against a state agency or department. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). Thus, even where the state is not a named party to the action, the suit will be barred so long as the state is the real party in interest. Camden County Recovery Coalition, 262 F. Supp. 2d at 448. "Therefore, absent waiver, neither a State, nor agencies under its control may be subjected to lawsuits in federal court." Doe v. Div. of Youth and Family Servs., 148 F. Supp. 2d 462, 483 (D.N.J. 2001). Moreover, regardless of whether the suit is for monetary damages or injunctive

---

[5]With respect to Russo's Complaint, the "State Defendants" include the New Jersey Department of Personnel and Merit System Board and Christine Todd Whitman, as former Governor and as Chief of the Executive Department of the State of New Jersey.

relief, the Eleventh Amendment bars suits against a state in federal court. Camden County Recovery Coalition, 262 F. Supp. 2d at 448.

_____Here, Russo and the County Defendants do not argue that the New Jersey Department of Personnel and Merit System Board and Governor Whitman are without entitlement to immunity from suit in federal court. Rather, these parties oppose the State Defendants' motion for summary judgment on the ground that the State Defendants have *waived* immunity and may not assert it as a defense at this late juncture.[6] In its brief submitted in opposition to the State's motion, the County argues that the State has waived its immunity since it has filed three dispositive motions in this case and has not raised it until now.

The relevant timeline of this matter is as follows. Villari filed his complaint in December, 2001 and Russo filed his complaint in January, 2002. In March, 2002, the State filed a motion to dismiss Russo's ADA, Section 1983 and common law intentional tort claims. In February, 2003, the State Defendants filed a motion to dismiss the Villari Complaint which was denied without prejudice pending discovery. On June 30, 2003 the State Defendants filed a motion for declaratory judgment, seeking a determination regarding their employer-status with respect to Ryerson. In response, the Court treated it a Rule 12(c) motion for judgment on the pleadings and declared that the State was Ryerson's employer for the purposes of Title VII and the NJLAD.

Since several years have passed since the complaints were filed and the State having filed several motions without raising the Eleventh Amendment as a defense, the County and Plaintiffs

---

[6]The County Defendants argue that the State has waived its immunity with respect to the County's cross-claim for contribution and indemnification, arguments which will be discussed infra. However, the Plaintiffs adopt the legal arguments set forth by the County and apply them to the Plaintiffs' claims under NJLAD.

argue that the Court should not allow it now. These parties argue that the State has improperly "h[e]ld back a sovereign immunity defense while seeking dismissal on the merits" and have thus waived it. (County Opp. to State Motion, p. 10). The County argues that the State, through its litigation conduct, has consented to suit in federal court since it has defended the suit on the merits and set forth a variety of case-law in support of this proposition.

However, the State correctly points out that the majority of the cases upon which the County and Plaintiffs rely do not involve a situation where a state defendant has raised the Eleventh Amendment in its Answer. Here, it is undisputed that the State raised the Eleventh Amendment as an affirmative defense in its Answers to Russo's and Villari's complaints.[7] The fact that the State Defendants did not raise the Eleventh Amendment as a defense until the instant motion is irrelevant. It is clear to the Court that it was raised at the earliest possible instance, in the Answers to the complaints, and thus, the parties have been on notice since. The Court agrees with the State Defendants that any perceived delay in raising the Eleventh Amendment resulted from adherence to the pretrial schedule set by this Court. This situation is analogous to that in the Supreme Court decision Raygor v. Regents of Univ. of Mn., 534 U.S. 533, 547 (2002). There, the Court determined that the State of Minnesota, a defendant in a civil action, had not waived its Eleventh Amendment defense even though it was not raised until the state moved for summary judgment ten months after the complaint was filed. Id. The Supreme Court determined that the

---

[7]The Sixteenth Affirmative Defense set forth in the State's Answer to Russo's Complaint and Twenty-First and Twenty-Second Affirmative Defenses set forth in the State's Answer to Villari's Complaint claim the Eleventh Amendment as a defense.

state had not waived this defense because Minnesota had raised it in the answer and the State had merely followed the pretrial schedule set by the Court. Id.

The County Defendants and Plaintiffs stress to the Court that the State Defendants' motion for declaratory judgment constituted a decision on the merits which waives its right to raise the Eleventh Amendment. The Court disagrees. The Court interprets the aforementioned motion as one made purely to clarify the legal responsibilities of the State with respect to Defendant Ryerson. After all, if Judge Hedges had determined that the State was not Ryerson's employer, the State's liability would have been significantly curtailed. Thus, it is illogical to expect the State to have raised the Eleventh Amendment by way of motion before the Court had even determined that the State had any liability. Further, the Court notes that the State raised such a defense in its Answers, in its objections to a 2004 decision of Magistrate Judge Hedges and in its pretrial order. The parties have thus had ample notice of the fact that the State intended to invoke the Eleventh Immunity from the earliest possible moment in the litigation. For the foregoing reasons, the Court concludes that the State and its agencies are protected from suit by the Eleventh Amendment. The State's motion for summary judgment is hereby granted and Russo's NJLAD claims for hostile work environment are dismissed as alleged against the Department of Personnel and Christine Todd Whitman. Russo's motion for summary judgment as alleged against the State Defendants is hereby denied.

ii.   *Hostile Work Environment Based on Sex*

In order to establish a prima facie case of harassment based on gender or national origin under the NJLAD, a plaintiff must show: (1) he or she suffered intentional discrimination

23

because of gender or national origin; and that the conduct was (2) severe or pervasive enough to make (3) a reasonable person of the same gender or national origin believe that (4) the conditions of employment have been altered to make the work environment hostile or abusive. Watkins v. Nabisco Biscuit Co., 224 F. Supp 2d 852, 863-64 (D.N.J. 2002) (citing Taylor v. Metzner, 152 N.J. 490, 506 (1998) (citations omitted)). The plaintiff must show that the incidents of harassment have altered the work environment into an abusive and antagonistic setting. Andrews v. City of Philadelphia, 895 F.2d 1469, 1483 (3d Cir. 1990). See also Heitzman v. Monmouth County, 321 N.J. Super. 133, 147 (App. Div. 1999) (to sustain a hostile work environment claim pursuant to NJLAD, incidents of harassing conduct must be considered severe and pervasive enough to alter the working environment). This inquiry requires a court to examine the totality of the circumstances to determine whether a plaintiff has established the elements of a hostile work environment claim. Cardenas v. Massey, 269 F.3d 251, 260-261 (3d Cir 2001). To establish employer liability, a plaintiff must establish that the supervisor whose behavior created the hostile work environment was acting within the scope of his employment. Lehmann v. Toys R Us, 132 N.J. 587, 619-620 (1993).

To prevail on his motion for summary judgment with respect to his claims of hostile work environment, Russo must meet the four elements set forth in Watkins and also establish that the County Defendants are liable for the actions of Ryerson. To establish his prima facie case, Russo asserts that Ryerson repeatedly made remarks of a sexual nature to him, about him and in his presence. Russo also alleges various instances where Ryerson touched, or attempted to touch Russo in a sexual manner on several occasions. Some of these allegations have been corroborated by other employees in the Elections Office. Russo asserts that this conduct of Ryerson is

sufficient to establish the existence of a prima facie case of a hostile work environment based on Russo's sex. Russo alleges that the County Defendants are liable under the NJLAD because they ignored Russo's complaints concerning Ryerson's behavior and failed to take remedial action which "equated to endorsement of Mr. Ryerson's actions by Defendants." (Pl. Br. Summ. J., p. 17). The County Defendants rely solely upon its joint/co-employer argument to in its motion for summary judgment. Thus, since the Court has already determined that this issue is inappropriate for disposition by way of summary judgment, supra Part II(B)(2), this Court will deny the County Defendants' motion with respect to Russo's claim of hostile work environment based upon sex.

Upon summary judgment, it is well settled that a party opposing the motion must set forth evidence which demonstrates that a material fact exists. Jersey Cent. Power & Light Co., 772 F.2d at 1109. Here, as previously stated, the County Defendants do not oppose the substance of Russo's motion. Rather, the County Defendants assert that they are entitled to summary judgment because simply, they are not the employers of the Plaintiffs. Without setting forth evidence to oppose Russo's allegations, it appears to the Court that the County has not carried its burden of proof and summary judgment should be granted to Russo. Further, since the Court is unable to determine at this juncture whether the County is the co-employer or joint employer of the Plaintiffs, the Court is also unable to grant summary judgment as a matter of law to Russo on this claim. Thus, both the County Defendants' and Russo's motions for summary judgment shall be denied with respect to Russo's NJLAD claim for hostile work environment based on sex as alleged against the County Defendants.[8]

---

[8]Since the Court denies summary judgment to Russo and the County Defendants, the Court finds it unnecessary to reach Russo's arguments concerning NJLAD liability for individual

25

iii.   *Hostile Work Environment Based on National Origin*

To set forth a <u>prima</u> <u>facie</u> case of hostile work environment based on national origin under the NJLAD, a plaintiff must prove the <u>Watkins</u> elements set forth <u>supra</u> as well as demonstrate that the plaintiff's employer is vicariously liable. With respect to his claims of hostile work environment based on national origin, Russo alleges that Ryerson repeatedly referred to Russo's Italian-American heritage in a derogatory manner by calling Russo "ginzo" in the presence of other employees. Russo asserts that this conduct of Ryerson is sufficient to establish the existence of a <u>prima</u> <u>facie</u> case of hostile work environment based on Russo's national origin. County Defendants cross-move for summary judgment on this claim and repeat their argument that they are not the co-employer or joint employer of Russo and thus have no liability under the NJLAD. However, the County Defendants also alternately oppose Russo's motion on the merits, and assert that Russo's claim should be dismissed since he has failed to demonstrate a <u>prima</u> <u>facie</u> case of hostile work environment based on national origin and because Russo never provided the County with notice of such a claim.

Russo contends that he and Villari were repeatedly referred to as "ginzos" by Ryerson in the presence of other employees. Russo contends that "ginzo" is an ethnic slur that refers to Italian-Americans and that he was targeted for such treatment because of his national origin. In support, Russo relies on the deposition of Villari and of a coworker, Elba Reyes ("Reyes"). Reyes states that she had heard Ryerson use the word "ginzo," "a few times" but provided no further specifics. (Reyes Dep. 63:2-5, August 24, 2004). Villari states that Ryerson repeatedly

---

defendants.

26

referred to himself and Russo as "ginzos," as often as several times a week. (Villari Dep. 216:4-7; 217:4-7, April 22, 2003). County Defendants argue that this conduct does not amount to a hostile or abusive environment since Ryerson's alleged conduct was not "so severe or pervasive that a reasonable Italian person would have found the conditions of his employment altered and his working environment hostile." (County Br. Summ. J., p. 27). The Court agrees.

First, Russo must demonstrate that Ryerson's conduct was "severe and pervasive." Watkins, 224 F. Supp 2d at 863-64. Although one incident of harassing conduct may create a hostile work environment, Lehmann v. Toys R Us, Inc., 132 N.J. 587, 606 (1993), such an occurrence is rare and typically requires an extremely grievous act, Taylor v. Metzger, 152 N.J. at 499-500. In Watkins, the district court held that the "severe and pervasive" analysis requires consideration of "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." 224 F. Supp 2d at 865 (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998)). Courts have found harassment to be severe and pervasive enough to alter the conditions of the employment relationship in circumstances where employees were repeatedly referred to in a derogatory manner and subjected them to racial jokes. Hightower v. Roman, Inc., 190 F. Supp 2d 740, 750-51 (D.N.J. 2002); see also Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1083 (3d Cir. 1996). With respect to this element, the Court determines that genuine issues of material fact exist. The Court determines that if Ryerson called Russo a "ginzo" several times a week as alleged, a jury could determine that this conduct was indeed "severe and pervasive."

27

Russo must also demonstrate that a reasonable person of Italian-American heritage would believe that the conditions of employment had been altered to make his work environment hostile or abusive. Watkins, 224 F. Supp 2d at 863-64. This element is necessarily linked to the first. As such, a plaintiff must demonstrate that the harassment goes beyond a mere lack of racial or ethnic sensitivity. Heitzman v. Monmouth County, 321 N.J. Super. 133, 143 (App. Div. 1999). To be actionable, any comments or incidents must amount to discriminatory changes in employment. Id.

The County Defendants argue that Russo has failed to demonstrate a prima facie case since a reasonable Italian-American would not have found the conditions of employment altered by repeated use of the word "ginzo." After review of Russo's submissions to the Court, it does not appear that Russo has opposed this portion of the County Defendants' motion nor established a prima facie case of hostile work environment based on national origin. Ryerson's use of the word "ginzo" to refer to Russo, while discourteous, does not rise to the level of ethnic harassment required under the NJLAD. Therefore, as a matter of law, the Court finds that the County Defendants are entitled to summary judgment on Russo's NJLAD claim of hostile work environment based on national origin and does not find it necessary to reach the merits of the County Defendants' claimed affirmative defense. Russo's motion for summary judgment on the same claim is denied for he has failed to establish a prima facie case. The Fifth Count of Russo's Complaint is hereby dismissed as alleged against the County Defendants.

**b.    Retaliation**

In Count Six of his Complaint, Russo alleges that the Defendants are liable under the NJLAD for their failure not to reappoint Russo after he engaged in protected employee activity.

28

Russo argues that his non-reappointment was retaliatory and constitutes a violation of the NJLAD. (Russo Compl., ¶¶ 165-170). Russo asserts that the Defendants failed to reappoint him to the position of Deputy Superintendent because he had filed grievances against Ryerson and filed an Order to Show Cause in state court complaining of harassing behavior. (Russo Compl. ¶¶ 140, 165). Russo further asserts that his switch in office space constituted retaliation and that he was harassed, alienated and slandered as a result of his participation in protected activities.

County Defendants request the Court to deny Russo's motion for summary judgment on Count Six of his Complaint and independently move to have this claim dismissed. County Defendants allege that Russo's NJLAD claim for retaliation should be dismissed because they share no liability for Governor Whitman's decision not to reappoint Russo at the end of his term. Further, the County Defendants offer a separate basis for summary judgment on the grounds that issues regarding non-reappointment implicate a nonjusticiable political question. State Defendants also request the Court to deny Russo's motion for summary judgment on Count Six of his Complaint and independently move for summary judgment on this claim, seeking to have it dismissed because the Court lacks appropriate subject matter jurisdiction pursuant to the Eleventh Amendment. As previously set forth in this Opinion, supra Part II(C)(2)(a)(i), the State is immune from suit under the NJLAD in federal court. Thus, summary judgment is hereby granted to State Defendants on Russo's NJLAD retaliation claim and Russo's motion is denied with respect to the State Defendants. Russo's claim for retaliation under the NJLAD as alleged against the State Defendants is hereby dismissed.

The NJLAD provision governing reprisal, § 10:5-12(d), provides that it is unlawful:

> [f]or any **person** to take reprisals against any person because that
> person has opposed any practices or acts forbidden under this act or
> because that person has filed a complaint, testified or assisted in
> any proceeding under this act or to coerce, intimidate, threaten or
> interfere with any person in the exercise or enjoyment of, or on
> account of that person having aided or encouraged any other person
> in the exercise or enjoyment of, any right granted or protected by
> this act.

N.J.S.A. § 10:5-12(d) (emphasis added). To establish a prima facie claim of retaliation under

either Title VII or the NJLAD, a plaintiff must show: "(1) that he engaged in a protected activity;

(2) that he suffered an adverse employment action; and (3) that there was a causal connection

between the protected activity and the adverse employment action." Cardenas v. Massey, 269

F.3d 251, 263 (3d Cir. 2001)(citations omitted). For an employment decision to constitute

"adverse employment action" for purposes of the NJLAD, "retaliatory conduct must affect

adversely the terms, conditions, or privileges of the plaintiff's employment or limit, segregate or

classify the plaintiff in a way which would tend to deprive her of employment opportunities or

otherwise affect her status as an employee." Marrero v. Camden County Bd. of Social Services,

164 F. Supp.2d 455, 473 (D.N.J. 2001) (quoting Hurley v. Atlantic City Police Dep't, 1998 WL

351781 (D.N.J. 1998), aff'd 174 F.3d 95 (3d Cir. 1999)); see also Robinson v. City of Pittsburgh,

120 F.3d 1286,1300 (retaliatory conduct other than discharge or refusal to rehire is thus

proscribed by Title VII only if it alters the employee's "compensation, terms, conditions, or

privileges of employment," deprives him or her of "employment opportunities," or "adversely

affect[s] his [or her] status as an employee.") (quoting Smart v. Ball State University, 89 F.3d

437, 441 (7th Cir. 1996)).

The parties do not contest whether Russo's grievances and Order to Show Cause constituted protected activities under the NJLAD. Similarly, the County Defendants do not contest whether Russo demonstrates the two remaining elements of his prima facie claim. Rather, the County Defendants disclaim liability for Russo's non-reappointment at the end of his term and for the switch made regarding Russo's office space. Since the County Defendants allege that they had no authority to engage in either action and did not participate in such decisions, they argue that they thus have no liability for a retaliation claim under the NJLAD. However, these assertions, even if true, do not necessarily eliminate the possibility that the County may be liable for the alleged retaliation. If Ryerson was Russo's supervisor and was responsible for Russo's discharge, while acting within the scope of his employment, and the Court were to determine that the County was Ryerson's and Russo's employer, then the County *could* be vicariously liable under the NJLAD. See Sunkett v. Misci, 183 F. Supp.2d 691, 718 (D.N.J. 2002) (citing Lehmann, 132 N.J. at 619, 626). Thus, the fact that the County did not authorize Russo's non-reappointment nor participate in such a decision does not end the inquiry.

However, it is clear from the record and from the applicable statutes that neither Ryerson nor the County had the authority to ensure or withhold Russo's appointment for another term as Deputy Superintendent. The only entity with that authority was Governor Whitman. See N.J.S.A. 19:32-26.1 (vesting the Governor with the authority to appoint the Deputy Superintendent of Elections with the advice and consent of the Senate). Thus, it does not follow that the County could share any liability for Governor Whitman's decision with regard to Russo's appointment or

31

non-reappointment.[9] Russo's motion for summary judgment on his NJLAD retaliation claim is denied with respect to his non-reappointment as alleged against the County Defendants. The County Defendants' motion for summary judgment is thus granted with respect to Russo's non-reappointment. Russo's claim for retaliation based on his non-reappointment as alleged against the County Defendants is hereby dismissed.[10]

With respect to Russo's remaining allegations of retaliatory actions, the Court determines that questions of material fact remain. It is undisputed that Ryerson moved Russo's office space at a time subsequent to Russo submitting his grievance with the Passaic County Personnel Office. Based on the facts contained in the record, a reasonable jury could determine that Ryerson's motivation for moving Russo's office was retaliatory and that the County Defendants were both directly liable by virtue of its knowledge of Russo's grievances and vicariously liable for Ryerson's actions if it is later determined that the County Defendants exercised day-to-day control in the Elections Office. Thus, the remainder of Russo's NJLAD claim for retaliation is improper for summary judgment. For these reasons, the Court denies both Russo's and the

---

[9]The Plaintiffs fail to introduce evidence which tends to prove that the Passaic County Democratic Party Chairman's endorsement of Russo for an additional term (an endorsement disregarded by Governor Whitman), was relevant to the County's liability for such a decision. The Plaintiffs themselves admit that it was merely a "practice and custom" for the Governor to defer to the recommendation of the party chairman. (Pl. Opp. Br., p. 9). The Court thus finds arguments relating to the endorsement irrelevant.

[10]Following the dismissal of a portion of Russo's NJLAD claim for retaliation, the Court does not find it necessary to proceed with its analysis of the County's claim that non-reappointment involved a non-justiciable political question.

County Defendants' motion for summary judgment on the Sixth Count of his complaint with respect to the remaining bases for retaliation under the NJLAD.[11]

### 3.    Americans With Disabilities Act Claims

Counts Seven and Eight of Russo's Complaint allege violations of Title I and Title II of the Americans With Disabilities Act. This claim was previously dismissed with respect to the State Defendants, and here, only Russo and the County Defendants move for summary judgment on these claims. In Count Seven, Russo alleges that while employed at the Elections Office, he suffered from a "disability," of which Ryerson and the County Defendants were aware, and that Ryerson and the County Defendants failed to make reasonable accommodations for his known physical limitations. (Russo Compl. ¶¶ 173-175). By failing to make such reasonable accommodations, Russo alleges that he was discriminated against within the meaning of both 42 U.S.C. § 12112 ("Title I") and 42 U.S.C. § 12132 ("Title II"). Russo moves for summary judgment on his Title I and Title II claims. The County Defendants cross-move for summary judgment on these claims. In support, these defendants assert that Russo is unable to prove that his alleged condition is a "disability" under the ADA. The County Defendants alternately assert that if Russo did indeed suffer from a disability, the County Defendants had no knowledge of such disability and that his request for new office space was promptly and reasonably accommodated.

_____

[11]The County Defendants also request the Court to dismiss Russo's claims for backpay. However, such a request was premised on the County's assumption that the Court was to dismiss certain other claims. Since Russo may still maintain certain claims of retaliation against the County Defendants, the Court will not dismiss his claims for backpay at this juncture.

### a.  Title I

Title I of the Americans with Disabilities Act ("ADA") provides that:

> [n]o covered entity shall discriminate against a qualified individual
> with a disability because of the disability of such individual in
> regard to job application procedures, the hiring, advancement, or
> discharge of employees, employee compensation, job training, and
> other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). To establish a prima facie case of discrimination under Title I, Russo must

show that "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise

qualified to perform the essential functions of the job, with or without reasonable

accommodations by the employer; and (3) he has suffered an otherwise adverse employment

decision as a result of discrimination." Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d

Cir. 1999). As used in 42 U.S.C. § 12112(a), the term "discriminate" includes "not making

reasonable accommodations to the **known** physical or mental limitations of an otherwise

qualified individual with a disability who is an applicant or employee, unless such covered entity

can demonstrate that the accommodation would impose an undue hardship." 42 U.S.C. §

12112(b)(5)(A) (emphasis added).

Russo requests the Court to enter summary judgment in his favor, and against County

Defendants, on the grounds that Russo has met his burden of proof under Title I. Russo alleges

that he suffers from Multiple Chemical Sensitivity Syndrome ("MCSS"), a condition which

qualifies as a disability under the ADA. People who suffer from MCSS are prone to adverse

physical reactions when exposed to substances like mold, smoke and mildew. (Pl. Br. Summ. J.,

p. 30). Russo also alleges that since he worked for over thirty years as an employee of the

34

Elections Office, he was thus "qualified" to perform his job. The crux of Russo's Title I claim is that the County Defendants had knowledge of his disability, yet still moved his office to a space that had previously been used as a smoking lounge, showed signs of mold and mildew and that had previously flooded, all conditions which exacerbated his disability. (Pl. Br. Summ. J., p. 30). Further, Russo alleges that despite his repeated requests for new office space, the County did not accommodate the requests until a New Jersey Superior Court ordered them to do so.

To make out a discrimination claim under Title I for his employer's failure to make a reasonable accommodation, Russo must first establish that the County Defendants knew of his alleged disability. Sever v. Henderson, 381 F.Supp 2d 405, 417 (M.D.Pa. 2005) (citing Taylor, 184 F.3d at 313). This can be accomplished by demonstrating that his employer had either actual or constructive knowledge of his alleged disability. Sever, 381 F.Supp 2d at 417 (citing Long v. Thomson Industries, Inc., 2000 WL 1586078, at *7 (E.D.Pa., October 24, 2003)). However, after reviewing the parties' submissions and the record, this Court finds no evidence that the County Defendants had either actual or constructive knowledge of Russo's alleged disability until *after* he asked for an accommodation. Rather, the Court finds only naked allegations regarding the County Defendants' knowledge of Russo's alleged disability.[12] Significantly, Russo does not once cite to the record in support of his allegation that the Elections Office had knowledge of his

---

[12]In his complaint, Russo alleges that Defendants Elections Office, Personnel Office, Freeholders and County "were aware that Plaintiff had a disability within the meaning of 42 U.S.C. § 12102(2)." (Russo Compl. ¶ 173). In the Plaintiffs' joint brief for the motion for summary judgment, it is stated that Russo's condition and its exacerbating factors were "made public knowledge to the Elections Office."

condition before his office was moved nor does the Court discern the existence of such evidence in the record. (Pl. Br. Summ. J., p. 28-32).

Further, without reaching the issue of whether or not MCSS qualifies as a "disability" under the ADA, it is clear to the Court that Russo does not provide evidence that his request for new office space was not reasonably accommodated as required to make out a prima facie case of Title I discrimination. On September 7, 1999, Russo returned to work from vacation and discovered that his office had been relocated to a room that allegedly aggravated his medical condition. (Pl. Stmt. Facts ¶ 149). Russo alleges that the condition of the new office aggravated his MCSS which forced him to take sick leave. (Id.). Russo's sick leave began that same day and continued, per his doctor's instructions, until October 6, 1999. (Pl. Stmt. Facts ¶ 150; Liu Cert. Exh. 50). Before the conclusion of Russo's sick leave, his office was moved again, this time to a different location which Russo has not complained of.[13] However, Russo argues that this does not constitute a reasonable accommodation of his alleged disability since Ryerson only instituted the second change in office space because he was ordered to do so by a New Jersey Superior Court Judge and it took nearly a month to accomplish. Russo does not point to any reason why this change in office space, executed during an employee-initiated sick leave, is not tantamount to a reasonable accommodation, as required to prove discrimination under Title I. Thus, as a matter of law, the Court determines that Russo is unable to make a prima facie case under Title I.[14] For the

---

[13]Russo's office appears to have been moved between September 29, 1999 and September 30, 1999. (Liu Cert. Exh. 48).

[14]To the extent that Russo, in his opposition to the County Defendants' motion for summary judgment and in the complaint, raises allegations concerning the existence of tobacco smoke and excessive amounts of perfume within the office space and Ryerson's failure to provide a reasonable accommodation with respect to these complaints, the Court does not

foregoing reasons, Russo's motion for summary judgment on his Title I claim is denied and

County Defendants' cross-motion for summary judgment is granted. The claim alleged against

County Defendants in Count Seven of the complaint is hereby dismissed.

### b. Title II

Title II provides that "no qualified individual with a disability shall, by reason of such

disability, be excluded from participation in or be denied the benefits of the services, programs or

activities of a public entity or be subjected to discrimination by any such entity." 42 U.S.C. §

12132. To make out a cause of action under Title II, Russo must prove that: (1) he is a qualified

individual; (2) with a disability; (3) he was excluded from participation in or denied the benefits

of the services, programs, or activities of a public entity, or was subjected to discrimination by

any such entity; (4) by reason of his disability. Bowers v. Nat. Collegiate Athletic Ass'n, 118

F.Supp.2d 494, 511 (D.N.J. 2000). Courts in this Circuit have noted that Title I typically deals

with discrimination related to private and public employment and Title II covers access to public

services. See Nelson v. Comm. of Pa. Dept. of Public Welfare, 244 F.Supp.2d 382 (E.D.Pa.

2002); Koslow v. Commonwealth of Pa., 302 F.3d 161, 166 n. 3 (3d Cir. 2002). The Supreme

Court has repeatedly stated that "where Congress includes particular language in one section of a

statute but omits it in another section of the same Act, it is generally presumed that Congress acts

intentionally and purposely in the disparate inclusion or exclusion." Bd. of Tr. of the Univ. of Al.

---

construe these as separate claims under the ADA. Rather, by way of his moving brief, Russo
casts his reasonable accommodation claim as one based *only* on the County Defendants' alleged
failure to reasonably accommodate Russo's request for new office space.

v. Garrett, 531 U.S. 356, 360 n.1 (2001) (quoting Russello v. United States, 464 U.S. 16, 23 (1983)).

In light of this Supreme Court jurisprudence, the Court determines that Title II does not provide Russo with a cause of action relating to his employment in the Elections Office. The substance of Russo's Title II claim pertains to his employment, not to the provision of public services. Further, even if the Court were to determine that Title II extended to an employment situation, Russo has failed to make such a prima facie case. In the Plaintiffs' brief for summary judgment, Russo does no more than set forth the statutory language of Title II. (Pl. Br. Summ. J., p. 29). Russo never addresses nor applies the elements of the prima facie Title II case to the facts and thus fails to prove that he is entitled to judgment as a matter of law. In light of Title II's inapplicability to an employer-employee discrimination case such as this one, and Russo's failure to demonstrate that he is able to establish the elements of an Title II claim, this Court hereby denies Russo's motion for summary judgment on Count Eight and grants County Defendants motion for summary judgment on this claim. This claim is hereby dismissed as alleged against County Defendants.

### 4.    42 U.S.C. § 1983 Claims

Plaintiff Russo requests this Court to grant summary judgment in his favor on his 42 U.S.C. § 1983 claim as alleged against the County Defendants.[15] In the complaint, Russo alleges that the County Defendants' conduct has "violated Plaintiff's constitutional rights, including his

---

[15]A previous order of the Court dismissed the State Defendants from this portion of Russo's Complaint. After reviewing the moving brief of the County Defendants, it does not appear to the Court that these defendants have moved for summary judgment on this count.

right to free expression, political association, substantive and procedural due process, privacy and equal protection" in violation of Section 1983. (Russo Compl. ¶189). Russo alleges that the Defendants, while acting under color of law, denied Russo his right to free expression by retaliating against him for filing grievances, refusing to re-appoint him and by refusing to make reasonable accommodations for his alleged medical condition.[16] Russo also alleges that the County Defendants denied him due process by failing to process his grievances and violated his privacy rights when the contents of his grievance were disclosed to other employees.

Section 1983 of Title 42 of the United States Code authorizes a person to seek redress for a violation of his federal constitutional rights by a person who was acting under color of state law. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Section 1983 does not create substantive rights; but rather "it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996) (citations omitted). "[A] section 1983 claim has two essential elements: (1) that the conduct complained of was committed by a person acting

---

[16]The Court notes that the language contained in the plaintiffs' moving brief is ambiguous with regard to what violations of constitutional and statutory rights Russo alleges that the County Defendants violated.

under color of state law; and (2) that the conduct deprived a [] person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Powell v. Ridge, 189 F.3d 387, 400 (3d Cir. 1999); see also Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Although Russo purportedly moves for judgment as a matter of law with respect to his Section 1983 claims, it is clear to the Court that Russo has failed to provide support for his allegations against the County Defendants and that these claims are inappropriate for summary judgment. In his submissions to the Court, Russo provides only naked allegations without one citation to the record. (Pl. Br. Summ. J., p. 31-32). Nor does the Court determine that the record contains evidence which demonstrates that any or all of the County Defendants qualify as state actors within the meaning of the statute, nor that there has been a clear violation of Russo's constitutional or statutory rights.[17] For these reasons, the Court will deny Russo's motion for summary judgment with respect to claims alleged in Count Nine of his complaint.[18]

---

[17]The Court notes that the County Defendants provide only partial opposition to Russo's motion on his §1983 claims. In circumstances where a nonmoving party fails to oppose the motion, Fed. R. Civ. P. 56(c) provides that the court may only grant the moving party's motion for summary judgment "if appropriate." See, e.g., Anchorage Assocs. v. V.I. Bd. of Tax Review, 922 F.2d 168, 175 (3d Cir. 1990); see also Damiano v. Sony Music Entm't, Inc., 975 F. Supp. 623, 627 (D.N.J. 1996) (granting summary judgment because the court considered the motion unopposed); U.S. v. Rohm & Haas Co., 939 F. Supp. 1157, 1161 (D.N.J. 1996) (same). A moving party's motion is appropriately granted when that party is entitled to judgment as a matter of law. Anchorage Assocs., 922 F.2d at 175. Thus, the Court will only grant summary judgment to Russo if he has demonstrated that he is entitled to judgment as a matter of law. This Court has previously determined that he is not so entitled.

[18]Since this Court has previously determined that the County is not liable for Russo's alleged retaliatory non-reappointment, it follows that an allegation of retaliation will not support a §1983 claim for the same. Thus, to the extent that Russo's Section 1983 claims relate to his non-reappointment, such portion of the claim is hereby dismissed.

### 5.    Negligence Claim

Russo requests the Court to grant summary judgment on his claim for negligence as alleged against both the County and State Defendants in Count Eleven of the complaint. The State and County Defendants, in turn, cross-move for summary judgment on the same claim. Russo alleges that the Defendants owed him a duty of care that was breached when he was placed in situations where his "known disability would be exacerbated" and where he would be "subjected to sexual and other harassment." (Russo Compl. ¶¶ 197-198). Since it was reasonably foreseeable to these Defendants that such conduct would occur, would damage Russo, and since Russo suffered damages as a result, Russo alleges that these Defendants are liable for negligence.

County Defendants move for summary judgment on Count Eleven on the basis that the New Jersey Workers Compensation Act (NJWCA), N.J.S.A. 34-15-1, et seq., prohibits an employee from bringing a negligence claim against his employer. Relying upon N.J.S.A. 34:15-8, the County Defendants correctly note that an employee may only bring a tort claim against his employer if the claim is based on an intentional wrong, not on negligence. The County also argues that since the complained-of behaviors are the subject of Russo's NJLAD claims, they are preempted and are not independently actionable.

State Defendants move for summary judgment on Count Eleven on the grounds that Russo does not allege that he has suffered an injury sufficiently severe to overcome the immunity provisions set forth in the New Jersey Tort Claims Act (NJTCA), codified at N.J.S.A. 59:9-1, et seq. The NJTCA prevents a court from awarding damages against a public entity for pain and suffering resulting from any injury unless the plaintiff meets a certain threshold of injury severity.

41

N.J.S.A. 59:9-2(d). Thus, since Russo alleges only emotional injury, the State Defendants argue that his negligence claim must be dismissed. The State Defendants also request the Court to dismiss this count since it is a tort claim[19] alleged against the State, and the State has not waived its immunity under the Eleventh Amendment.

As discussed supra, Part II(C)(2)(a)(i), the Court determines that the State has not waived its Eleventh Amendment immunity from suit. Thus, the Court does not need to reach the State Defendants' arguments of the State Defendants relating to the NJTCA. Russo's motion for summary judgment on Count Eleven is denied as alleged against the State Defendants, and the State's motion for summary judgment is granted. Count Eleven is hereby dismissed as alleged against the State Defendants.

The Court will now address the remaining arguments of Russo and the County Defendants as they pertain to Count Eleven of the complaint. Although the NJWCA limits an employee's cause of action against an employer to ones arising from intentional wrongs, Russo argues that the County Defendants acted in such a way as to make it "virtually certain" that his harms would occur. Thus, Russo reasons, County Defendants conduct takes them outside the exclusivity provision of the NJWCA. The NJWCA exclusivity section provides, in relevant part:

> If an injury or death is compensable under this article, a person shall not be liable to anyone at common law or otherwise on account of such injury or death for any act or omission occurring while such person was in the same employ as the person injured or killed, except for **intentional wrongs**.

---

[19]The State sets forth this specific argument in Point III of its moving brief and stipulates that it should apply to all of Russo's tort claims. Thus, the Court will extend the argument to Russo's claim of negligence.

N.J.S.A. 34:15-8 (emphasis added). Neither party contests that Russo's claimed injuries stemming from Ryerson's harassment fall within the provisions of the NJWCA. Rather, the disputed issue is whether Russo's potential workers compensation claim is his exclusive remedy, or whether he may also bring a state tort claim against County Defendants. If Russo's injuries are compensable under the NJWCA he is barred from bringing his state law tort claim and it would be necessarily dismissed. Russo alleges that since Ryerson was in a supervisory position over Russo, and the County did not respond to Russo's complaints regarding Ryerson's behavior, these actions were "virtually certain" to result in Russo's injuries, removing them from the coverage of the NJWCA's exclusivity provision. The County Defendants, however, argue that Russo's claim falls squarely within this provision and alternately, argue that such a claim is preempted because of the remedies available to Russo under the NJLAD.

At this juncture, the Court is unable to grant summary judgment to Russo or the County Defendants. Genuine issues of material fact clearly exist with regard to whether or not the County was a co-employer or joint employer of Russo at the time in question. If it were ultimately determined that the County had no employer status with regard to Russo, it would then likely not have owed a duty of care to Russo, part of the prima facie action in negligence. This issue is thus inappropriate for resolution by way of summary judgment. The Court finds it unnecessary to reach the substantive arguments that pertain to Count Eleven until the contours of

43

the County's duty to Russo are determined further.[20] Russo's and the County Defendants'

motions for summary judgment on Count Eleven are hereby denied.

### 6.    Negligent and/or Willful Hiring & Retention Claim

Russo requests the Court to grant summary judgment on his claim for negligent and/or

willful hiring with of Ryerson as alleged against both the County Defendants and State

Defendants in Count Twelve of his complaint. The County and State Defendants, in turn, cross-

move for summary judgment on the same claim. Russo alleges that Defendants failed to exercise

due care by hiring and retaining Ryerson in light of his allegedly "well-documented past

conduct." (Russo Compl. ¶¶ 201-206). Russo argues that at the time Ryerson was appointed, it

was reasonably foreseeable that Ryerson would engage in conduct injurious to third persons and

that as a direct and proximate result of his appointment, Russo suffered damages. (Id.).

County Defendants move for summary judgment on Count Twelve and repeat the

arguments set forth above with respect to Count Eleven. To repeat, County Defendants assert that

the NJWCA, N.J.S.A. 34-15-1, et seq., prohibits an employee from bringing a claim sounding in

negligence against his employer. Relying upon N.J.S.A. 34:15-8, the County Defendants

correctly note that an employee may only bring a tort claim against his employer if the claim is

based on an intentional wrong, not on negligence. The County also argues that since the

complained-of behaviors are the subject of Russo's NJLAD claims, they are preempted and not

independently actionable.

---

[20] This determination shall have no bearing on arguments relating to the applicability of
the NJWCA. Nor does it constitute a decision on the merits of the County Defendants' argument
that the negligence claim is preempted by Russo's NJLAD claims.

The State Defendants move for summary judgment on Count Twelve on the basis that the appointment and retention of Ryerson, an appointee of Governor Whitman, is a non-justiciable political question. The State Defendants also request the Court to dismiss this count since it is a tort claim alleged against the State, and the State has not waived its immunity under the Eleventh Amendment. As discussed supra, Part II(C)(2)(a)(i), the Court determines that the State has not waived its Eleventh Amendment immunity from suit. Thus, the Court does not need to reach the remaining arguments relating to justiciability. Russo's motion for summary judgment on Count Twelve is denied as alleged against the State Defendants, and the State's motion for summary judgment is granted. Count Twelve is hereby dismissed as alleged against the State Defendants.

The Court will now address the remaining arguments of Russo and the County Defendants as they pertain to Count Twelve of the complaint. It is well-established in this District that employee claims of negligent hiring and retention brought against employers are barred by the exclusivity provision of the NJWCA.[21] See Cremen v. Harrah's Marina Hotel Casino, 680 F.Supp. 150, 155 (D.N.J. 1988); DeMaria v. The Home Depot, 1998 WL 1750127, *3 (D.N.J. 1998). Russo's attempt to cast this claim as one of "willful" hiring and retention to remove it from coverage of the exclusivity provision has no basis in the facts of this case, or the applicable law. Further, the Court finds it difficult to imagine how the County could be responsible for the appointment and retention of Ryerson when it had no authority, statutory or otherwise, to appoint nor terminate him. For these reasons, the Court determines that the County Defendants are entitled to judgment as a matter of law on Count Twelve of Russo's complaint.

---

[21]It is thus irrelevant whether it is ultimately determined that the County Defendants are the co-employer or joint employer of Russo.

45

The County Defendants' motion for summary judgment on this claim is granted and Russo's motion for summary judgment on the same is denied. Count Twelve is hereby dismissed as alleged against the County Defendants.

**D.    William Villari**

Villari was hired as an investigator in the Elections Office by a prior Superintendent of Elections in 1987 and became Chief Investigator in 1990. On August 25, 1999 Ryerson suspended Villari for thirty days without pay. (Liu Cert. Exh. 25). The reasons stated for Villari's suspension were his "cavalier attitude," "unprofessional performance," "foul verbiage concerning females," and "refusal to cooperate with an internal investigation." (<u>Id.</u>) The suspension memorandum also demoted Villari from Chief Investigator to Investigator. (<u>Id.</u>) On September 2, 1999, Villari filed a formal grievance concerning Ryerson's behavior addressed to Nancy Ackerman-Shipper, the Personnel Officer for Passaic County. (Liu Cert. Exh. 27). On September 3, 1999, Villari filed a similar grievance with the New Jersey Department of Personnel and Merit System Board and appealed his suspension. On December 14, 1999 Ryerson terminated Villari's employment at the Elections Office.

**1.    Hostile Work Environment**

In Counts One, Two, Four and Five of the complaint, Villari alleges that the County and State Defendants are liable for violations of Title VII and the NJLAD. Specifically, Villari alleges that these Defendants are liable for the existence of a hostile work environment based on Villari's sex and national origin. Villari alleges that Ryerson's conduct, relating to Villari's sex and national origin, created a working environment that was hostile and abusive, for which these

46

defendants are liable. Villari asserts that since the County and State Defendants shared employer-status with regard to him, they are both liable for Ryerson's conduct in creating a hostile work environment.

Since New Jersey state courts generally follow the applicable standards of proof under Title VII in applying NJLAD, the analysis of discrimination claims brought pursuant to Title VII is equally applicable to those discrimination claims under NJLAD. Abrams v. Lightolier, Inc., 50 F.3d 1204, 1212 (3d Cir. 1995). To establish a claim for hostile work environment under either statute, Russo must demonstrate that "(1) he suffered intentional discrimination because of his national origin [and sex]; (2) the discrimination was pervasive and regular; (3) it detrimentally affected him; (4) it would have detrimentally affected a reasonable person of the same protected class in his position; and (5) there is a basis for vicarious liability." Cardenas v. Massey, 269 F.3d 251, 260 (3d Cir. 2001) (citation omitted). The Court must look to a "totality of the circumstances" to determine whether a hostile work environment exists. Id. at 260-61.

### a.    Hostile Work Environment Based on Sex[22]

In Counts One and Four of his complaint, Villari alleges that Ryerson touched him and made inappropriate comments of a sexual nature towards him which would not have occurred but for Villari's gender. (Villari Compl. ¶¶ 96, 126). Villari asserts that these incidents amounted to severe and pervasive discriminatory conduct that created a hostile working environment for which the Defendants are liable. (Villari Compl. ¶¶ 97-100; 127-129).

---

[22]Since the State's argument relating to Russo's standing under Title VII do not apply to Villari because Villari is not an appointed employee, the Court will treat Villari's Title VII and NJLAD hostile work environment claims together.

The County Defendants cross-move for summary judgment on Counts One and Four on the basis that they are not liable under either Title VII or the NJLAD for Villari's claims of hostile work environment based on sex. The County Defendants argue that there is insufficient evidence to establish that the County was a co-employer or joint-employer of Villari, and thus the County has no liability for Villari's claims of hostile work environment based on sex under either statute.

The State Defendants cross-move for summary judgment on Counts One and Four and request the Court to dismiss Villari's claims for hostile work environment based on sex. State Defendants argue that Villari's Title VII claim for hostile work environment based on sex should be dismissed for failure to exhaust his administrative remedies since he did not name the State Defendants in his EEOC charge and argue that his NJLAD claim for the same be dismissed since this Court lacks subject matter jurisdiction pursuant to the Eleventh Amendment.

By way of preliminary matter, the Court will deny Villari's motion for summary judgment on his NJLAD claim for hostile work environment based on sex with respect to the State Defendants for the reasons set forth in this opinion, supra, Part II(C)(2)(a)(i). The Court's prior determination with respect to Russo's Complaint that the State Defendants are entitled to the protection from suit by the Eleventh Amendment applies with equal force to the State Defendants named in Villari's Complaint. Thus, the Court will deny Russo's motion for summary judgment on this claim as alleged against the State Defendants and grant the State Defendants' motion for summary judgment. Count Four of Villari's Complaint is hereby dismissed.

The Court will now address the arguments of the County Defendants. Villari alleges that Ryerson repeatedly made remarks of a sexual nature to him, about him and in his presence, as well as various instances where he touched, or attempted to touch Villari in a sexual manner. The County Defendants do not provide substantive opposition to these allegations. Rather, County Defendants move for summary judgment on the basis that they were not Villari's co-employer or joint-employer and thus cannot be liable under Title VII or the NJLAD. However, since the Court has previously determined that this issue is inappropriate for disposition by way of summary judgment, the Court will deny the County Defendants' motion with respect to Villari's Title VII and NJLAD claims of hostile work environment based on sex. Similarly, without resolution of the County's employer status, the Court is consequently unable to grant summary judgment as a matter of law to Villari. Villari's motion for summary judgment on Counts One and Four is denied as alleged against the County Defendants.

Villari moves, and the State Defendants cross-move, for summary judgment on Count One of the complaint. Villari asserts that he has established a prima facie case of Title VII hostile work environment based on his sex for which the State Defendants are liable. The State Defendants, in turn, cross-move on the basis that Villari has not exhausted his administrative remedies, as required by 42 U.S.C. § 2000e-5, and is thus barred from bringing this claim against State Defendants.

Prior to the institution of an action under Title VII, a plaintiff must timely file his claim with the EEOC and receive a right to sue letter from the agency. 42 U.S.C. § 2000e-5. A timely charge of discrimination with the EEOC is not jurisdictional, but rather, is comparable to a statute of limitations. Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982); Anjelino v.

49

The New York Times Co., 200 F.3d 73, 87 (3d Cir. 1999). Accordingly, claims brought pursuant to Title VII can be dismissed for failure to exhaust such administrative remedies. Anjelino, 200 F.3d at 87-88; Knoll v. Springfield Township Sch. Dist., 699 F.2d 137, 145 (3d Cir. 1983), vacated on other grounds, 471 U.S. 288 (1985); Santiago v. City of Vineland, 107 F. Supp 2d 512, 528 (D.N.J. 2000).

The parties do not dispute that Villari filed a charge with the EEOC alleging hostile work environment claims based on his sex. However, the State Defendants argue that since Villari did not name any State Defendants in the charge, Villari has failed to comply with 42 U.S.C. § 2000e-5. Villari's EEOC charge was drafted and received by the Newark Area Office on April 10, 2000. (Liu Cert. Exh. 1). It is undisputed that the charge does not contain a single reference to any State Defendant. However, Villari asserts that his failure to name the State Defendants in his charge is not fatal to the claim since the State Defendants received alternative notice of the claim and share a commonality of interest with the named party, the Elections Office.

The Third Circuit recognizes an exception to the requirement in 42 U.S.C. 2000e-5(f)(1) that a Title VII action may only be brought against a party previously named in the EEOC charge. In Glus v. The G.C. Murphy Co., 629 F.2d 248 (3d Cir. 1980), vacated on other grounds, 451 U.S. 935 (1981), the court established an exception for circumstances where the unnamed party has notice and shares a commonality of interests with a named party. Glus, 629 F.2d at 251. To determine whether commonality of interests exists, this Court must examine four factors:

> (1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; (2) whether, under the circumstances, the interests of a named

[party] are so similar [to] the unnamed party that for purposes of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; (3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; (4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

Id. This exception was applied in another Third Circuit case upon which Villari relies, Schafer v. Bd. of Public Educ. of the Sch. Dist. of Pittsburgh, Pa., 903 F.2d 243, 251 (3d Cir. 1990), to determine that the plaintiff could not bring a Title VII suit against a party unnamed in the EEOC charge since the elements of the Glus exception were not met. Id.

The Court determines that Villari has not demonstrated that he meets the exception for exhaustion set forth in Glus. Although the State arguably had notice of potential Title VII claims by way of a September 3, 1999 letter mailed to the Commissioner and Chairwoman of the New Jersey Department of Personnel and Merit System Board,[23] it is clear that Villari does not demonstrate that the State Defendants share a commonality of interest with the Elections Office sufficient to meet the exception. (Liu Cert. Exh. 28). Applying the factors set forth in Glus, this Court determines that (1) Villari could have ascertained the names of certain State Defendants at the time he filed his EEOC charge on April 10, 2000; (2) the interests of the County and State Defendants are opposite from one another since they vigorously dispute who is ultimately liable for Ryerson's actions; (3) the State Defendants were prejudiced since they never received an opportunity to resolve the matter through conciliation; and (4) there is no evidence in the record

_____

[23]The letter included allegations that Villari "ha[d] been the subject of sexual harassment, hostile working environment and other forms of discrimination by Mr. Ryerson over the course of the last six months." (Liu Cert. Exh. 28).

that the State Defendants have represented to Villari that its relationship with Villari will be through the County. For the foregoing reasons, the Court determines that Villari has failed to exhaust his administrative remedies with respect to his Title VII claims against the State Defendants and that the State Defendants are entitled to judgment as a matter of law. Villari's motion for summary judgment on Count One is denied, the State Defendants' motion on Count One is granted and Count One is dismissed as alleged against State Defendants.

**b.      Hostile Work Environment Based on National Origin**

In Counts Two and Five of the complaint, Villari alleges that he was subject to a hostile work environment based on his Italian-American heritage, for which the County and State Defendants are liable. Villari alleges that Ryerson made derogatory remarks about his national origin that would not have occurred but for his origin, which were severe and pervasive and which detrimentally affected him and would have so affected a reasonable person in his same position. (Villari Compl. ¶¶ 107-112; 135-138).

County Defendants cross-move for summary judgment on Counts Two and Five on the basis that they are not liable under either Title VII or the NJLAD for Villari's claims of hostile work environment based on national origin. The County Defendants argue that there is insufficient evidence to establish that the County was a co-employer or joint-employer of Villari, and thus the County has no liability for Villari's claims of hostile work environment based on sex. The County Defendants also move for summary judgment on the basis that Villari is unable to demonstrate a prima facie case of hostile work environment based on national origin, and that in any case, the County has an affirmative defense to such a claim.

State Defendants cross-move for summary judgment on Counts Two and Five and request the Court to dismiss Villari's claims for hostile work environment based on national origin. State Defendants argue that Villari's Title VII claim for hostile work environment based on national origin should be dismissed for failure to exhaust his administrative remedies since he did not name the State Defendants in his EEOC charge and argue that his NJLAD claim for the same be dismissed since this Court lacks subject matter jurisdiction pursuant to the Eleventh Amendment.

Again, by way of preliminary matter, the Court will deny Villari's motion for summary judgment on his NJLAD claim for hostile work environment based on national origin with respect to the State Defendants for the reasons set forth in this opinion, supra, Part II(C)(2)(a)(i). The Court's prior determination with respect to Russo's complaint that the State Defendants are entitled to the protection from suit by the Eleventh Amendment applies with equal force to the State Defendants named in Villari's complaint. Thus, the Court will grant the State Defendants' motion for summary judgment on this claim and will dismiss Count Five of the complaint. Further, in light of the Court's conclusion supra, Part II(D)(1)(a), the Court will deny Villari's motion for summary judgment on Count Two and grant that of the State Defendants. Villari has failed to exhaust his administrative remedies with respect to this count as well and the Court's conclusion thus applies with equal force. Count Two is dismissed as alleged against the State Defendants.

Villari alleges that he has demonstrated a prima facie case of hostile work environment based on national origin under Title VII and the NJLAD, but the Court concludes otherwise. The Court echoes its analysis of Russo's NJLAD claim for hostile work environment based on national origin supra, Part II(C)(2)(a)(iii), and determines that as a matter of law, Villari has not

53

demonstrated a *prima facie* case of hostile work environment based on national origin under either Title VII or the NJLAD. Villari's allegations with respect to this claim are substantially similar to Russo's, save for an additional allegation that Ryerson often referred to Villari as a "guinea" as well as a "ginzo." Just as Russo failed to show that Ryerson's conduct was sufficient to amount to actionable ethnic harassment, so does Villari. The Court reiterates that there is a distinction between ethnic harassment and mere discourtesy. See Heitzman, 321 N.J. Super. at 143 (App. Div. 1999). The Court does not condone the use of derisive remarks derogatory towards Villari's Italian-American heritage, but as a matter of law determines that the use of such remarks does not give rise to a claim under Title VII or the NJLAD. For these reasons, Villari's motion for summary judgment is denied, the County Defendants motion for summary judgment is granted, and Counts Two and Five are dismissed as alleged against County Defendants.[24]

### 2.    Retaliation

In Counts Three and Six of the complaint, Villari alleges that the County and State Defendants are liable for violations of Title VII and the NJLAD. Specifically, Villari alleges that his suspension and termination were retaliatory and constitute violations of these statutes. Villari alleges that his grievance against Ryerson and his Order to Show Cause in state court constituted protected employee activity within the meaning of 42 U.S.C. § 2000e-3 and N.J.S.A. 10:5-12(d). (Villari Compl. ¶¶ 119; 144).

---

[24]To the extent that Villari also moves for summary judgment on the issue of whether the County Defendants and State Defendants are liable to Villari under principles of respondeat superior, the Court denies the motion. Respondeat superior is a basis for liability under Title VII and the NJLAD, not a separate cause of action. Issues relating to the Defendants' liability for the actions of Ryerson will be addressed where relevant.

The County Defendants cross-move for summary judgment on Counts Three and Six and request the Court to dismiss these counts. County Defendants allege that they are not liable for Ryerson's, an employee of the State, decision to suspend or terminate Villari. The County stipulates that Ryerson was the only person with the legal authority to terminate Villari and denies that the County in any way encouraged or participated in such action.

The State Defendants also cross-move for summary judgment on Counts Three and Six on the grounds that Villari's Title VII retaliation claim should be dismissed for failure to exhaust his administrative remedies and that Villari's NJLAD retaliation claim should be dismissed for lack of subject matter jurisdiction pursuant to the Eleventh Amendment. The Court agrees. As set forth supra, in Parts II(C)(2)(a)(I) and II(D)(1)(a), respectively, the Eleventh Amendment bars Villari's NJLAD retaliation claim and his failure to exhaust his administrative remedies bars his Title VII retaliation claim. The Court denies Villari's motion for summary judgment with respect to the State Defendants, grants the summary judgment motion of the State Defendants and dismisses Counts Three and Six as alleged against the State Defendants.

Pursuant to N.J.S.A. 19:32-27, Ryerson possessed the authority to appoint any employees and personnel he deemed necessary to carry out the elections statutes and "may remove the same whenever he deems it necessary." Id. Ryerson was also responsible for determining the salaries of any appointed employee, and the salary would be paid by the Passaic County Treasurer. Id. It is thus evident that Ryerson possessed clear statutory authority to set Villari's salary, suspend or terminate him. Although the County Defendants rely on these statutory provisions to bolster their argument that they could not have any liability for Ryerson's decision to suspend, demote or terminate Villari, the Court determines that genuine issues of material fact exist regarding

55

Ryerson's decision to terminate Villari which preclude a grant of summary judgment at this juncture.

Although Ryerson undoubtedly was the final authority on personnel decisions relating to Villari, there is evidence in the record that raises questions regarding the extent of the County's knowledge of and involvement in Elections Office personnel decisions, including the decision to terminate Villari. Nancy Ackerman-Shipper ("Ackerman-Shipper") states that she visited Ryerson several times to "review[] requests for title changes and salary changes for some of his employees," to review the "correct title, responsibilities and salary" for a new hire of Ryerson's, and as part of her involvement in the ongoing sexual harassment investigation. (Ackerman-Shipper Dep. 29:12-25; 30:9-20; 32:15-21, September 7, 2004). Further, there is evidence in the record that Ackerman-Shipper, on at least one occasion, witnessed Ryerson make sexually-related comments or was on the receiving end of such comments. (Villari Dep.135:5-22, April 22, 2003). Ackerman-Shipper also states that she discussed the allegedly inappropriate behaviors within the Elections Office with Ryerson before July 1999. (Ackerman-Shipper Dep. 256-258, September 16, 2004).

Villari also alleges that after he attended the Passaic County sexual harassment seminar, he attempted multiple times to contact Ackerman-Shipper to complain of Ryerson's behavior since she was the person who processed these types of complaints. (Villari Dep. 266: 7-16, April 23, 2003). After Villari filed a formal complaint against Ryerson, Ackerman-Shipper did not notify anyone at the state level. (Ackerman-Shipper Dep. 284:1-11, September 16, 2004). Prior to Villari's suspension, Ryerson consulted Ackerman-Shipper and was advised that the suspension seemed excessive. (Id. at 298:1-8). Villari filed his EEOC charge on April 11, 2000. When

Ackerman-Shipper was contacted by an EEOC Investigator inquiring why the County had not responded to Villari's charges, Ackerman-Shipper replied that the office of the County Counsel would be handling the matter. (Liu Cert. Exhs. 37, 38). These behaviors are not consistent with the County's position that it cannot be liable for Ryerson's allegedly retaliatory conduct against Villari. Rather, from the record, it appears that the County may have been involved in Ryerson's personnel decisions since the County Defendants had knowledge of Villari's complaints and believed that Villari's grievance should be handled by the County Counsel. From these facts, the Court determines that there is "disagreement over what inferences can be reasonably drawn from the facts" relating to possible County liability for employment actions taken by Ryerson against Villari. Ideal Dairy Farms, Inc., 90 F.3d at 744. This disagreement precludes the Court from granting summary judgment on Counts Three and Six to Villari and to the County Defendants. These parties' motions for summary judgment are denied with respect to Villari's retaliation claims under Title VII and the NJLAD.

### 3.    Breach of K

Villari moves the Court for summary judgment on his claim that the County Defendants committed a breach of contract when he was terminated from his position at the Elections Office. Villari asserts that since the Passaic County Personnel Manual ("Personnel Manual") provided that a permanent employee could not be removed without just and written cause, his suspension, demotion, rescission of his pay raise and ultimate termination violated its terms and constituted a breach of his employment contract. In support, Villari relies on a New Jersey Supreme Court case which held that under certain conditions, an employee can enforce the substantive provisions of an employment manual against an employer. Wooley v. Hoffmann-La Roche, Inc., 99 N.J. 284,

285 modified on other grounds, 101 N.J. 10 (1985). Villari argues that the Personnel Manual

constituted an employment contract between himself and Passaic County that was breached when

he was terminated for retaliatory reasons.

The County Defendants move the Court for summary judgment and request the Court to

dismiss Villari's breach of contract claim for failure to state a claim. In support of their position,

County Defendants argue that Villari has not proven that the Personnel Manual actually existed

or was in force at the time in question, that a state statute providing Ryerson with sole control

over the hiring and firing of employees trumps any implied contract with the County, and finally,

that the County was not Villari's employer. The County Defendants rely heavily on a New Jersey

Supreme Court decision which held that a county prosecutor's statutory authority to discharge an

employee created an at-will employment relationship which trumped any contract implied from a

personnel manual. Golden v. County of Union, 163 N.J. 420, 430 (2000) (citations omitted). The

Golden Court, in reaching its conclusion, determined that since "the Legislature ha[d]

unambiguously designated assistant prosecutors as at-will employees, the manual's provisions

are not enforceable as applied to plaintiff." Id. at 433.

In Wooley, the New Jersey Supreme Court held that "absent a clear and prominent

disclaimer, an implied promise contained in an employment manual that an employee will be

fired only for cause may be enforceable against an employer even when the employment is for an

indefinite term and would otherwise be terminable at will." 99 N.J. at 285-86. However, in

Golden, the New Jersey Supreme Court declined to extend this proposition to the statutorily-

created employment relationship between a county and assistant prosecutor. Instead, the Court

held that when a *statute* confers an at-will employment relationship upon a public employee, the

58

terms of the statute trump any contract implied by a manual. Golden, 163 N.J. at 433. The Golden Court relied on the statutory language found in N.J.S.A. 2A:158-15 which allows county prosecutors to appoint assistant prosecutors "who shall hold their appointments at the pleasure of the respective prosecutors." Id. In the case of the Passaic County Elections Office, N.J.S.A. 19:32-2 allows each superintendent to "appoint a chief deputy ... and any other assistants ... and may remove the same whenever he deems it necessary." Id.

This Court determines that the language of N.J.S.A. 19:32-2 is analogous to the language found in N.J.S.A. 2A:158-15 to the extent that it creates an at-will employment relationship between Villari, who falls into the "other assistant[]" category in N.J.S.A. 19:32-2, and Ryerson, as Superintendent. In light of the holding in Golden, it follows that Ryerson's statutory authority to remove Villari "whenever he deems it necessary" establishes Villari as an at-will employee and trumps the provisions in the Personnel Manual regarding termination. See id. at 430. As such, this Court determines that, as a matter of law, there is no employment contract, either express or implied, between Villari and the County upon which Plaintiff may state a claim for breach of contract.[25] Villari's motion for summary judgment with respect to his breach of contract claim is hereby denied and the County Defendants motion for summary judgment is hereby granted. The claim for breach of contract as asserted against the County Defendants is hereby dismissed.

4.    **Negligence**

---

[25]However, this determination does not affect the County's potential liability under Title VII and the NJLAD regarding alleged retaliatory employment actions.

Villari requests the Court to grant summary judgment on his claim for negligence as alleged against both the County Defendants and State Defendants in Count Ten of the complaint. The County and State Defendants, in turn, cross-move for summary judgment on the same claim. Villari alleges that the Defendants owed him a duty of care that was breached when he was placed in situations where he "would be injured." (Villari Compl. ¶¶ 169-170). Since it was reasonably foreseeable to these Defendants that such conduct would occur and would damage Villari, and since Villari suffered damages as a result, Villari alleges that these Defendants are liable for negligence. (Villari Compl. ¶¶ 171-172).

The County and State Defendants cross-move separately for summary judgment on Count Ten. With minor exceptions, the substance of Villari's negligence claim is the same as Russo's negligence claim. Thus, the Court does not find it necessary to repeat the arguments or analysis set forth <u>supra</u>.

With respect to the State Defendants, the Court determines that the State Defendants are entitled to summary judgment as a matter of law. For the reasons set forth <u>supra</u>, Part II(C)(2)(a)(i), the Court concludes that the State Defendants have not waived their Eleventh Immunity from suit. Thus, the Court need not reach the remaining arguments relating to the New Jersey Tort Claims Act. Villari's motion for summary judgment on Count Ten is denied as alleged against the State Defendants and the State's motion for summary judgment is granted. Count Ten is dismissed as alleged against the State Defendants.

With respect to the County Defendants, the Court will deny Villari's and the County Defendants' motion for judgment as a matter of law on Count Ten. For the reasons set forth

supra, II(C)(5), the Court concludes that genuine issues of material fact exist pertaining to the duty element in the prima facie case for negligence. This claim is thus inappropriate for summary judgment. Villari's and the County Defendants' motion for summary judgment on Count Ten are hereby denied.

### 5.   Negligent/Willful Hiring & Retention

Villari requests the Court to grant summary judgment on his claim for negligent hiring with respect to Ryerson as alleged against both the County Defendants and State Defendants in Count Eleven of his complaint. Villari alleges that Defendants failed to exercise due care by hiring and retaining Ryerson in light of his allegedly "well-documented past conduct." (Villari Compl. ¶176). Villari argues that at the time Ryerson was appointed, it was reasonably foreseeable that he would engage in conduct injurious to third persons and that as a direct and proximate result of his appointment, Villari suffered damages. (Villari Compl. ¶¶ 175-178).

The County Defendants and State Defendants separately cross-move for summary judgment on Count Eleven and repeat their arguments which pertained to Count Twelve of Russo's Complaint. Thus, the Court does not find it necessary to repeat the arguments or analysis that is set forth supra in this Opinion.

With respect to the State Defendants, the Court determines that the State Defendants are entitled to summary judgment as a matter of law. For the reasons set forth supra, Part II(C)(2)(a)(i), the Court concludes that the State Defendants have not waived their Eleventh Immunity from suit. Thus, the Court need not reach the remaining arguments relating to the New Jersey Tort Claims Act. Villari's motion for summary judgment on Count Eleven is denied as

61

alleged against the State Defendants and the State's motion for summary judgment is granted. Count Ten is dismissed as alleged against the State Defendants.

With respect to the County Defendants, the Court will deny Villari's motion for summary judgment and grant the motion of the County Defendants. As set forth at length in Part II(C)(6) of this Opinion, it is clear that claims for negligent hiring and retention are barred by the exclusivity provision of the NJWCA. Further, even if the claim was validly alleged, the Court does not determine how the County could be responsible for the appointment and retention of Ryerson when the County had no authority, statutory or otherwise, to appoint nor terminate him. For these reasons, the Court determines that the County Defendants are entitled to judgment as a matter of law with respect to Count Eleven of the complaint. The County Defendants' motion is granted and Villari's is denied. Count Eleven is hereby dismissed as alleged against the County Defendants.

### 6.    Tort Claims

#### a.    Assault and Battery

Villari requests this Court to grant his motion for summary judgment on his claims for assault and battery against County Defendants. Villari argues that he has successfully carried his burden of proof demonstrating that he was the victim of assault and battery at the hands of Peter Ryerson. Villari argues that Ryerson committed assault by repeatedly bringing firearms into the workplace and by indicating that he would harm Villari. (Pl. Br. Summ. J., p. 35). Villari alleges that Ryerson committed battery by repeatedly touching Villari without Villari's consent.

The County and State Defendants request this Court to deny Villari's motion for summary judgment on his claims for assault and battery and to instead dismiss these claims. These defendants base their arguments on the NJTCA which protects a public entity from liability for the "acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct." N.J.S.A. 59:2-10. The County and State Defendants argue that since Ryerson was an employee of a public entity, neither is liable for Villari's claims of assault and battery since these are intentional torts.

Regardless of whether this Court determines that the County or State was Ryerson's employer, both are public entities and Ryerson is undisputedly a public employee. Thus, this Court determines that the NJTCA applies and insulates the County and State Defendants from liability for Ryerson's willful misconduct. For the foregoing reasons, the Court denies Villari's motion for summary judgment and grants the motions of the County Defendants and State Defendants on these claims. Villari's claims for assault and battery as alleged against the County and State Defendants are hereby dismissed.[26]

### b.    Defamation

Villari moves the Court for summary judgment on his claim for defamation against the County and State Defendants. Villari argues that he has made a prima facie showing of defamation and that the claim is thus appropriate for summary judgment. Villari alleges that

---

[26]This determination with regard to County and State liability has no import on Plaintiffs' claims for assault and battery against Peter Ryerson.

Ryerson made statements about Villari to employees in the Elections Office concerning Villari's sexual preferences that were false.

The County and State Defendants request the Court to deny Villari's motion for summary judgment and move for summary judgment to have Villari's claim of defamation dismissed. Both groups of Defendants again assert the protections of the NJTCA and argue that they have no liability for Ryerson's alleged defamatory statements since defamation is an intentional tort and Ryerson is a public employee. The Court agrees and extends its reasoning from the prior portion of the Opinion. For the foregoing reasons, the Court denies Villari's motion for summary judgment and grants the motions of the County and State Defendants on Villari's claim. Villari's claim for defamation as alleged against the County and State Defendants is hereby dismissed.[27]

### c.      Intentional Infliction of Emotional Distress

Villari requests the Court to grant his motion for summary judgment on his claim for intentional infliction of emotional distress against both the County and State Defendants. Villari argues that he has satisfied his burden of proof for this cause of action by demonstrating that Ryerson acted intentionally and employed extreme and egregious conduct in a manner that caused extreme distress to Villari. (Pl. Br. Summ. J., p. 34-35).

The County Defendants and State Defendants request the Court to deny Villari's motion for summary judgment and instead dismiss this claim. Again, the Defendants invoke the protections of the NJTCA since Villari alleges an intentional tort committed by a public

---

[27]This determination with regard to County and State liability has no import on Plaintiffs' claims for defamation against Peter Ryerson

employee, Ryerson. The Court refers to its reasoning as stated above in the portion of the Opinion addressing Villari's claims of assault and battery and reaches the same conclusion. For the foregoing reasons, the Court denies Villari's motion for summary judgment and grants the motions of the County Defendants and State Defendants on these claims. Villari's claim for intentional infliction of emotional distress against the County Defendants and State Defendants is hereby dismissed.[28]

**E.    Ryerson's Motion**

On July 25, 2005, Defendant Ryerson moved this Court for leave to join in the summary judgment motions filed by the County and State Defendants. As this motion was outside of the briefing schedule set by this Court, the Court did not deem it necessary to address the motion until now. The Court received opposition to Ryerson's motion from the Plaintiffs only. Plaintiffs argue that Ryerson's request should be denied since it was made fifty-two days after the Court-imposed deadline for the submission of dispositive motions in this matter. The Court agrees and will deny Ryerson's motion.[29]

On May 26, 2005, the Honorable Ronald J. Hedges, United States Magistrate Judge issued a scheduling order which required all parties to file and serve any motions for summary

---

[28]This determination with regard to County and State liability does not bear on Plaintiffs' claims for intentional infliction of emotional distress against Peter Ryerson.

[29]In Farris v. County of Camden, 61 F.Supp 2d 307, 320 (D.N.J. 1999), the Court denied a party's motion for summary judgment on the basis that it was untimely filed and did not set forth good cause for the delay. In Chiropractic Alliance of New Jersey v. Parisi, 164 F.R.D. 618 (D.N.J. 1996), a court, upon reconsideration of its earlier decision, affirmed its dismissal of a party's motion to dismiss on the basis that it did not comply with an earlier scheduling order of the Court.

judgment on all parties on or before June 3, 2005. Ryerson does not dispute that this order applied to him, does not allege that he was without notice of its provisions, nor does he provide the Court with good cause for his delay in filing his motion. Ryerson did not file a notice of motion for leave to join in the other parties' motions until July 25, 2005. Thus, it is clear that Ryerson did not comply with the scheduling order.[30] Further, it is clear to the Court that the County and State Defendants go to great lengths to distance themselves from Ryerson and his alleged behavior and thus the arguments set forth in their motions do not substantively pertain to Ryerson.

Although a court may permit a party to join another party's motion for summary judgment if it would preserve resources and enhance judicial efficiency, the Court determines that Ryerson's position within this litigation is unique from those of all other parties. As the alleged primary tortfeasor, Ryerson's legal position varies greatly from that of the other defendants. Thus, it does not appear to the Court that judicial economy would be served if the Court were to grant Ryerson's motion. Nor will this denial prejudice Ryerson's rights since he was on notice of the scheduling order and may still assert his defenses at trial. Ryerson had a clear opportunity to file a dispositive motion within the guidelines set by Magistrate Judge Hedges, and if unable to do so, could have petitioned the Court for an extension. He did neither. For the foregoing reasons, this Court will deny Ryerson's motion for leave to join in the other parties' dispositive motions and for summary judgment in its entirety.

**F.      Plaintiffs' Motion for Summary Judgment With Respect to Ryerson**

---

[30]See Fed. R. Civ. P. 16(f) (providing that a judge may impose sanctions for a party's failure to comply with a scheduling or pretrial order).

66

Russo moves for summary judgment against Ryerson on Count Fourteen (assault), Count Thirteen (battery) and Count Fifteen (defamation). Villari moves for summary judgment against Ryerson on Count Thirteen (assault), Count Twelve (battery) and Count Fourteen (defamation). Although the Court has denied Ryerson's motion to join in other motions and for summary as untimely, to the extent that his motion provides opposition to Plaintiffs' motion the Court will consider it. However, since Ryerson merely "joins in the statement of undisputed material facts" set forth by the County and State Defendants and does not provide his own statement of disputed material facts, the Court does not determine that this brief actually opposes any portion of Plaintiffs' motion for partial summary judgment. Although failure to provide such a statement alone is grounds to grant Plaintiffs' motion, the Court also notes that Ryerson's brief does not contain one citation to the record that could lead the Court to determine that genuine issues of material fact exist with regard to Plaintiffs' claims of assault and battery and defamation.

When, as here, the nonmoving party fails to oppose the motion by written objection, memorandum, affidavits and other evidence, the court "will accept as true all material facts set forth by the moving party with appropriate record support." Anchorage Assocs., 922 F.2d at 175. That is to say, failure to oppose a motion for summary judgment effects a waiver of the right to controvert the facts asserted by the moving party. Id. at 175-76. Such failure to oppose the motion does not, however, allow the district court to automatically grant a motion for summary judgment. Jaroma v. Massey, 873 F.2d 17, 20 (1st Cir. 1989). Such a rule would violate Fed. R. Civ. P. 56(e) ("If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.") (emphasis added). The "appropriateness" of summary judgment requires the court to determine that the moving party demonstrate that it is entitled to

67

judgment as a matter of law. Anchorage Assocs., 922 F.2d at 175; Bowers, 118 F. Supp. 2d at 510. Thus, summary judgment is not properly entered in favor of the moving party based solely on a failure to oppose the motion, without a determination that the moving party is entitled to judgment as a matter of law based on facts set forth in the motion. Anchorage Assocs., 922 F.2d at 171.

With this legal framework in mind, the Court will address Plaintiffs' motion for summary judgment with respect to these claims.

### 1.    Assault and Battery

Plaintiffs move for summary judgment on their claims of assault and battery. The substance of each Plaintiff's claims is the same. Each claim alleges that Ryerson's actions, including the unauthorized, intentional touching of the Plaintiffs were harmful and offensive and caused damage to the Plaintiffs, constituting an assault and battery under state law. (Russo Compl. ¶¶ 208-210; Villari Compl. ¶¶ 181-183).

In New Jersey, an assault and battery in the civil context is defined as follows: "A person may be liable for battery if 'he acts intending to cause a harmful or offensive contact...or an imminent apprehension of such contact' and a 'harmful' or 'offensive' contact 'directly or indirectly' results. Restatement (Second) of Torts § 13, 18 (1965). An assault can occur even if no contact actually results, where the victim is placed in 'imminent apprehension of a harmful or offensive contact." Id. at § 21. Abraham v. Raso, 15 F. Supp.2d 433, 448 (D.N.J. 1998), reversed in part, vacated in part, 183 F.3d 279 (3d Cir. 1999), (citing Giovine v. Giovine, 284 N.J. Super. 3, 33 (App. Div. 1995)). Plaintiffs allege that on various occasions Ryerson brought firearms into

the workplace and left them sitting out on his desk and would repeatedly touch or attempt to touch the Plaintiffs, placing them in apprehension of unwanted physical contact.

Since Ryerson does not dispute the facts alleged by the Plaintiffs, the Court will deem Plaintiffs' statement of facts as admitted if there is appropriate record support. After careful review of the record, this Court notes that the record appears to contain facts that constitute a prima facie case of assault and battery committed by Ryerson against both Plaintiffs. The record indicates that Ryerson used to bring firearms into the office to show them off, "juggled Mr. Villari by the shoulders," "struck Mr. Villari in the right thigh," "attempt[ed] to touch Mr. Villari's genitals," tried to give Villari hugs and indicated that he was going to physically harm Villari. (Pl. Stmt. Facts ¶¶ 72, 73, 74, 75, 84, 85). The record also indicates that Ryerson kissed Russo on the forehead multiple times, and would attempt to touch Russo "in ways that made Mr. Russo uncomfortable, including draping his arm around Mr. Russo, patting Mr. Russo's behind or touching Mr. Russo's crotch." (Id. at ¶¶120, 128).

Based on the record, the Court determines that the Plaintiffs are entitled to judgment as a matter of law on their claims of assault and battery. On numerous occasions, the Plaintiffs were on the receiving end of both attempts and resulting offensive contact by Ryerson in the form of touches to both Villari's and Russo's genital areas. There is no indication to the Court that either of these parties consented to such contact. In fact, Villari states that he repeatedly told Ryerson to stop touching him and Russo complained to the County about such contact. (Id. at ¶¶ 90, 131). New Jersey courts recognize that contact need not be harmful for liability for a battery to attach. Kelly v. County of Monmouth, 380 N.J. Super. 552, 560 (N.J. Super.A.D. 2005). In New Jersey, the touching of a plaintiff's genitals, in the absence of consent, can constitute a battery. Id. at

560. For these reasons, the Court will grant Russo and Villari's motions for summary judgment as a matter of law on Counts Thirteen and Fourteen of Russo's Complaint and Counts Twelve and Thirteen of Villari's Complaint.[31]

### 2. Defamation

A defamatory statement, under New Jersey law, is defined "as one that tends to so harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Ward v. Zelikovsky, 136 N.J. 516 (1994). Whether a statement is reasonably susceptible of a defamatory meaning is a threshold question of law to be decided by the court. Ditzel v. Univ. of Medicine and Dentistry of New Jersey, 962 F. Supp. 595, 605 (D.N.J. 1997). Only where there is a question as to whether the language is capable of both defamatory and non-defamatory meaning does a question of fact arise. Wilson v. Grant, 297 N.J. Super. 128 (App. Div. 1996).

To establish a defamation claim, Plaintiffs must establish the following:

1. A defamatory statement in fact;
2. concerning the plaintiff;
3. which is false;
4. which is communicated to a person or persons other than the plaintiff;
5. with actual knowledge that the statement was false or with reckless disregard of the statement's truth or falsity or with negligence in failing to ascertain the truth or falsity; and
6. which caused damage.

---

[31]Although the record contains evidence sufficient to prove a claim for assault and battery with respect to instances where Ryerson touched Russo and Villari without their consent, the Court is unable to determine how many instances of assault and battery actually occurred.

Doug Grant Inc. v. Greate Bay Casino Corp., 3 F. Supp 2d 518, 538 (D.N.J. 1998) (citing

Feggans v. Billington, 291 N.J. Super. 382, 391 (App. Div. 1996)). Plaintiff's burden of proof for

each of the elements of defamation is by clear and convincing evidence. Rocci v. Ecole

Secondaire MacDonald-Cartier, 165 N.J. 149, 159 (2000). Additionally, a defamation claim must

allege, in particular, the defamatory words, the person or persons who uttered them, and when,

where, and to whom they were published.  Doug Grant Inc., 3 F.Supp 2d at 538 (citing Miele v.

Rosenblum, 254 N.J. Super. 8, 12 (App. Div. 1991)).

Plaintiffs allege that Ryerson "falsely stated that Mr. Russo and Mr. Villari had a

homosexual relationship" by making certain comments which referred to the closeness of their

friendship. At various times Ryerson would ask the Plaintiffs who was the "pitcher" and who

was the "catcher" and who is "on top" and who is "on the bottom." (Pl. Br., p. 46). At least one

time, such comment was said "in earshot of other people in the office." (Villari Dep., 38:23-24,

March 21, 2003). Russo also alleges a separate basis for defamation that focuses on Ryerson's

allegation that Russo engaged in unethical conduct while carrying out the duties of his position

which Ryerson allegedly knew to be false. At this juncture, the Court determines that it is unable

to grant summary judgment as a matter of law on Plaintiffs' claims for defamation, despite the

lack of opposition from Ryerson.

Although a New Jersey court has determined that a "false accusation of homosexuality is

reasonably susceptible to a defamation meaning," and is sufficient to establish the first element

of the prima facie case, there is insufficient evidence in the record to demonstrate that the

Plaintiffs succeed on the other elements. Gray v. Press Comms., LLC, 342 N.J.Super. 1, 10 (N.J.

App. Div. 2001). Further, with respect to Russo's allegation concerning Ryerson's statements to the State Attorney General's office concerning Russo's alleged professional improprieties, it is unclear whether Russo alleges that this constitutes slander per se. If Russo were to make a claim for slander per se the Court would apply a different standard. It appears to the Court that the issues pertaining to the Plaintiffs' claims for defamation have not been fully briefed by the Plaintiffs since they do not address the complete standard for defamation nor provide record support for each element. For these reasons, the Court will deny Plaintiffs' motion for summary judgment on Count Fifteen of Russo's Complaint and Count Fourteen of Villari's Complaint.

### G.     Entities Which Cannot be Sued

#### 1.     Claims Against the Passaic County Office of the Superintendent of Elections & Commissioner of Registration

County Defendants argue that since the Passaic County Office of the Superintendent of Elections & Commissioner of Registration is a state office with limited authority, all claims against the Elections Office must be dismissed since it cannot be sued in its own name for monetary damages. The County asserts that the New Jersey statute that established the Elections Office did not also provide the office with independent sovereignty. Thus, without sovereignty and the ability to sue or be sued for monetary damages, the proper Defendant is the State of New Jersey, not the Elections Office.

72

Plaintiffs request the Court to deny the Defendants' motion for summary judgment on this count. In support, Plaintiffs refer the Court to a case in the District of New Jersey where "the Superintendent of Elections has been sued and monetary recovery obtained." (Pl. Br. Opp., p. 10). Plaintiffs also argue that the Elections Office has waived its Eleventh Amendment immunity by representations of its counsel and through the actions of the State within the instant litigation, but does not point to any specific instance of waiver.[32]

The Elections Office is a creation of the New Jersey State Legislature. N.J.S.A. 19:32-1, et seq. Although the legislature could have bestowed the Elections Office with the ability to sue and be sued, such powers were never expressly granted. Further, the case which Plaintiffs cite to in support of the proposition that the Elections Office can be sued for monetary damages, Vargas v. Calabrese, 750 F.Supp. 677 (D.N.J. 1990), is distinguishable. In Vargas, the Plaintiff sued, inter alia, various former and current Superintendents of Elections of Hudson County and alleged liability for monetary damages based on alleged violations of election laws. Id. at 679. However, the Hudson County Elections Office was not named as a defendant in Vargas and thus, the case offers no support to Plaintiffs' reasoning that the Elections Office can be a liable entity.

As the nonmoving party, the Plaintiffs must demonstrate the existence of a genuine dispute of material fact. Fed. R. Civ. P. 56(e). Here, after reviewing the party submissions on this point and finding no basis for holding the Elections Office liable, this Court finds that the portions of the Plaintiffs' Complaints which name the Passaic County Office of the

---

[32]The Court notes that this case presents an interesting situation since there is an undisputed State entity, the Elections Office, being represented by private counsel and being treated as part of the "County Defendants."

73

Superintendent of Elections & Commissioner of Registration as a defendant should be dismissed. This Court thus grants in part County Defendants motion for summary judgment. The Complaints of Russo and Villari are dismissed as to this particular defendant.[33]

### 2.   New Jersey Department of Personnel and Merit System Board

State Defendants move for summary judgment and dismissal of Russo's Complaint[34] as it pertains to the New Jersey Department of Personnel and Merit Board System ("Department of Personnel"). The basis for Russo's allegation against the Department of Personnel is the department's alleged responsibility for "overseeing employment practices of the state and county agencies and departments and for investigating grievances lodged against such public entities." (Russo Compl. ¶ 42). The state argues that Russo never notified the Department of Personnel or filed a grievance with them, nor does Russo demonstrate that the Department occupies any role in the appointment or termination of employees of the Elections Office.

Although the Plaintiffs' opposition to the State Defendants' motion for summary judgment purports to prove that Russo has demonstrated a cognizable cause of action against the Department of Personnel, this Court does not find support for such a statement within the Plaintiffs' Brief in Opposition. Rather, Russo makes no specific mention of either the Department of Personnel or Merit Board System within the section purportedly relating to the

---

[33]Thus, to the extent that the Court refers to the "County Defendants" supra, this term shall not be construed to include the Passaic County Office of the Superintendent of Elections & Commissioner of Registration.

[34]The Court notes that the State Defendants' motion for partial summary judgment on this issue only pertains to Russo's Complaint, not Villari's.

Department of Personnel.[35] (Pl. Br. Opp., p. 6-9). Thus, as the nonmoving party, it is clear that Russo has not demonstrated the existence of a genuine dispute of material fact nor presented evidence on which the jury could reasonably find that the Department of Personnel was liable for any claims alleged in his complaint. Anderson, 477 U.S. at 256, 252. For this reason, the Court grants in part the State Defendants' motion for summary judgment. Russo's Complaint is dismissed as to this Defendant.[36]

## H.   Punitive Damages

The County Defendants move for summary judgment on the Plaintiffs' claims of punitive damages. These Defendants assert that they are entitled to have the claims for punitive damages dismissed because the Plaintiffs are unable to present any evidence that any employee acting on behalf of the County engaged in discriminatory conduct with "malice" or "reckless indifference" to Plaintiffs' rights, nor acted in an "especially egregious" manner as necessary to support a jury award of punitive damages. (County Br. Summ. J., p. 39) (citations omitted). The Plaintiffs oppose the motion for summary judgment and assert that in light of the County's knowledge of

---

[35]Point Three of the Plaintiffs' Brief in Opposition purports to argue that "Plaintiffs State Justiciable Causes of Action Against the Department of Personnel and Against the Merit Board System." However, the text that follows does not make a single reference to the Department of Personnel.

[36]Thus, to the extent that the Court refers to the "State Defendants" supra, with respect to Russo (only) this term shall not be construed to include the Department of Personnel and Merit Board System.

the behaviors taking place within the Elections Office and the County's failure to take any protective or remedial action, a jury could award punitive damages.

Defendants maintain that Plaintiffs' claims under Title VII and NJLAD for punitive damages is not warranted, as Plaintiffs do not meet the outrageousness/egregiousness threshold set forth by both the federal courts and the New Jersey Supreme Court. Punitive damages may be awarded against a public entity "only in the event of actual participation by upper management or willful indifference." Lehmann, 132 N.J. at 625; see also Abbamont v. Piscataway Tp. Bd. of Educ., 138 N.J. 405, 429 (1994) (punitive damages may be awarded against a public entity "only if the conduct or managerial or supervisory government officials is particularly egregious and involves willful indifference or actual participation"). The New Jersey Supreme Court stated that "[i]n addition to the requirement of actual participation in or willful indifference to the wrongful conduct on the part of upper management, we also impose a requirement of proof that the offending conduct be 'especially egregious.'" Rendine v. Pantzer, 141 N.J. 292, 314 (1995) (quoting Leimgruber v. Claridge Assocs., 73 N.J. 450, 454, 375 A.2d 652 (1977)). The Rendine court further noted:

> To warrant a punitive award, the defendant's conduct must have been wantonly reckless or malicious. There must be an intentional wrongdoing in the sense of an "evil-minded act" or an act accompanied by a wanton and wilful disregard of the rights of another. ... The key to the right to punitive damages is the wrongfulness of the intentional act.

Rendine, 141 N.J. at 314 (citations omitted). Moreover, under Title VII, reckless and malicious conduct is required. Domm v. Jersey Printing Co., Inc., 871 F. Supp. 732, 739 (D.N.J. 1994). In

the present case, County Defendants argue that Plaintiffs' claims for punitive damages must fail since they cannot meet this heightened standard.

Although a plaintiff seeking punitive damages must meet a heightened threshold of review, it is not an analysis that is appropriate on summary judgment. "[T]he allowance of such damages inherently involves an evaluation of the nature of the conduct in question, the wisdom of some form of pecuniary punishment, and the advisability of a deterrent. Therefore, the infliction of such damages, and the amount thereof when inflicted, are of necessity within the discretion of the trier of fact." Fisher v. Volz, 496 F.2d 333, 347 (3d Cir. 1974). "The issue of punitive damages is a fact question which should be decided by a jury." Domm, 871 F. Supp. at 739; see also Weiss v. Parker Hannifan Corp., 747 F. Supp. 1118, 1135 (D.N.J. 1990) ("[T]he decision whether to award punitive damages is solely within the discretion of the finder of fact, and it may choose to deny punitive damages even though intentional or malicious behavior is evident."). In light of the foregoing, the County Defendants' motion with respect to punitive damages is denied.

## I.   Cross-Claim for Indemnification/Contribution

In their Answers to the Plaintiffs' complaints, the County Defendants also bring a cross claim for contribution and indemnification against the State Defendants and Ryerson since "the liability alleged against the Passaic Defendants is predicated entirely upon the conduct of either Peter Ryerson and/or the State of New Jersey" and Ryerson is a state employee. (Crossclaim ¶ 2). State Defendants now move for partial summary judgment on the County Defendants cross claim. State Defendants argue that this claim should be dismissed since the state has not waived its Eleventh Amendment immunity, Title VII does not provide for contribution or

77

indemnification and the issue of whether NJLAD provides for such is not an issue to be determined by a federal court. In opposition, the County Defendants re-assert that the State Defendants have waived their Eleventh Amendment immunity since the State chose to litigate this action on the merits without raising this as a defense.

As discussed supra, in Part II(C)(2)(a)(i), a federal court is prohibited from hearing claims brought against a state unless the state has consented to suit. Camden County Recovery Coalition, 262 F.Supp 2d at 448. This Court, having previously determined that the State is entitled to Eleventh Amendment immunity and has not waived it, will grant the State Defendants' motion for summary judgment as it pertains to the County Defendants' cross claim.[37] The County Defendants' cross claim is dismissed as alleged against the State Defendants.

## Conclusion

For the foregoing reasons, the Court GRANTS the County Defendants' Motion for Summary Judgment in part and DENIES the motion in part. The Court GRANTS the State Defendants' Motion for Summary Judgment. The Court GRANTS the Plaintiffs' Motion for Summary Judgment and DENIES it in part. The Court DENIES Ryerson's Motion for Leave to Join and for Summary Judgment.

An appropriate order follows.

DATED: February 27, 2006                    /s/ Jose L. Linares
                                            United States District Judge

---

[37]Since the Court dismisses the cross-claim on Eleventh Immunity grounds, it is not necessary to discuss the remaining arguments pertaining to the cross claim.